# EXHIBIT A

# 借 款 合 同

合同编号：**ZTDC-JKHT1711-06**

借 款 人：（以下称"甲方"）上海富控互动娱乐股份有限公司
统一社会信用代码：913100006072187512
法定代表人：王晓强
送达地址：上海市虹口区广粤路437号2幢
联系电话：021-68823766

出借人：（以下称"乙方"） 中铁大成（珠海）投资管理有限公司
统一社会信用代码：91440400MA4W9CPP9A
法定代表人：岑菁
送达地址： 北京市朝阳区广渠路21号金海商富中心A座1906
联系电话：010-59693120



（在甲方与乙方签订的《借款合同》（以下简称"本合同"）中，甲方与乙方统称为"双方"，各自简称为"一方"。）

根据中华人民共和国有关法律法规之规定，甲、乙双方按照平等、自愿、诚实信用原则，经协商一致，就甲方向乙方借款事宜订立本合同，共同严格遵守。

**第一条 甲方的保证与承诺**
1.1 甲方是具有完全民事行为能力的法人，能独立承担民事责任。
1.2 甲方在本合同项下的全部意思表示真实。
1.3 甲方在本合同项下的借款用途完全合法。
1.4 甲方向乙方提交的全部资料、证件均真实、合法、有效。

**第二条 借款金额、借款利率、借款用途、借款期限、还本付息方式**
2.1 借款金额：
不低于人民币叁仟万圆整（￥30,000,000.00）。
（实际借款金额以乙方通过银行划付借款的凭证所载金额为准，乙方通过银行划付借款的凭证为本合同的组成部分，与本合同具有同等法律效力）。
2.2 借款利率：年利率20%。
2.3 借款用途：流动资金。
2.4 借款期限：本合同项下的借款期限自本合同第三条第3.2款约定的事项全部办理完毕且乙方通过银行划付借款之日（即借款发放之日）起届满9个月之当日止（注：每月按30个自然日计算，下同）。
本合同所载的借款期限起始日与乙方通过银行划付借款的凭证所载日期不一致的，借款期限起始日以乙方通过银行划付借款的凭证所载日期为准，借款到期日应根据借款期限起始日相应调整。

- 1 -

2.5 支付利息方式:

2.5.1 甲方按以下约定的日期及金额向乙方支付借款利息:

a. 自借款发放之日起届满 1 个月之当日,甲方向乙方支付第一个月借款利息,自借款发放之日起届满 2 个月之当日,甲方向乙方支付二个月借款利息,以后支付利息的日期及金额,依此类推。

b. 甲方按本合同第四条第 4.2 款约定在借款发放之日起届满 6 个月后提前偿还借款本金的,其利息计算至借款本金偿还当日。

2.5.2 乙方在收到甲方支付的相应利息后应向甲方提供收据,如甲方需出具合法有效的发票,则由甲方自行承担相关税费。

2.5.3 如借款期限延长,则付息方式由双方另行确定。

2.6 还本方式:

2.6.1 甲方在借款期限届满之当日还本。

2.6.2 如借款期限延长,则还本日依据双方就借款展期金额及期限达成一致的协议相应顺延。

### 第三条 借款的发放

3.1 借款的发放:

3.1.1 甲方需将指定的收款账户于乙方划付借款之前通过《委托收款函》书面送达乙方。乙方将借款付至甲方指定账户之当日即视为起息日,乙方在银行划付借款的凭证为本合同项下借款发放及本息偿还的有效证据。

3.1.2 乙方将借款付至《委托收款函》约定的甲方指定账户之日,则视为乙方已履行完毕本合同项下的义务。

3.2 在下列条件全部符合时,乙方才可发放借款:

(1) 甲方未发生或不存在本合同所约定的任一条款违约事件或违约行为;

(2) 本合同已经双方签署并生效。

### 第四条 借款本息的偿还

4.1 甲方须按本合同项下约定的付息日和还本日足额支付利息、偿还借款本金至乙方的指定银行账户,该银行账户由乙方另行向甲方提供或指定。。

4.2 甲方有权自借款发放之日起届满 6 个月后提前偿还借款本息。

### 第五条 甲方的权利和义务

5.1 甲方有权依本合同约定的期限、金额、用途提取和使用借款。

5.2 甲方须按本合同约定的用途使用借款,不得将借款挪作他用。

5.3 甲方按本合同的约定偿还借款本息。

5.4 甲方不得以与其他任何第三方纠纷为理由延迟或拒绝履行还款义务。

5.5 甲方无条件接受乙方对借款使用情况进行的检查和监督。

5.6 在甲方履行完毕本合同项下债务之前,未经乙方书面同意,不得出售和处分名下主要资产、不得提前清偿其它债务。

5.7 甲方未征得乙方的书面同意,不得将其在本合同项下的任何还款及其他义务转移给第三人。

5.8 甲方有下列任一事项时,应当至少 5 日书面通知乙方,并且在本合同项下债权得到全部清偿前,不应采取下列行动:

（1）甲方对名下主要资产出售、赠与、出租、出借、转移、抵押、质押或以其他方式进行处分；

（2）甲方为第三方提供担保或债务承担等具有担保效果的类似行为。

5.9 甲方应当在下列事项发生或可能发生之日起 3 日内书面通知乙方：

（1）甲方变更住所、通讯地址、联系方式等事项；

（2）甲方涉及重大诉讼或仲裁案件，或主要资产或本合同项下担保物被采取了财产保全等强制措施；

（3）甲方签署对其财务状况有重大影响的合同；

（4）甲方涉及违法活动。

## 第六条　乙方的权利和义务

6.1 乙方有权检查和监督本合同项下借款的使用情况。

6.2 乙方有权按本合同约定收回借款，并按本合同项下约定收取利息、罚息、违约金等及其它应由甲方支付的费用。

6.3 对甲方逃避监督、拖欠借款本金和利息的行为，乙方有权进行催收。

6.4 除非双方另行协商约定，甲方支付的款项应按下列顺序清偿乙方的债权：

（1）实现债权的费用（包括但不限于：催收费、诉讼费、评估费、保全费、公告费、律师费、执行费、差旅费等）；（2）罚息；（3）违约金；（4）利息；（5）本金。

6.5 乙方应按本合同约定及时发放借款，但因甲方原因造成迟延的除外。

6.6 本合同履行期间，乙方的通讯地址（如住所、联系电话等）发生变更的，需在变更发生之日起 3 日以书面形式通知甲方。

6.7 在本合同有效期内，乙方有权转让本合同项下部分或全部债权，无须征得甲方同意，但应书面通知甲方。乙方转让本合同项下的债权后，甲方应继续履行本合同约定的各项义务。

6.8 乙方有权行使法定及本合同项下约定的债权人享受的其他权利。

## 第七条　借款的提前到期

本合同有效期内，发生或发现下列情况之一的，乙方有权单方宣布本合同项下已发放的借款提前到期，并要求甲方立即偿还所有提前到期借款本金并结清利息。

7.1 甲方向乙方提供虚假的证照及资料的。

7.2 未经乙方书面同意，甲方擅自改变本合同项下任何一笔借款用途的。

7.3 未经乙方书面同意，甲方擅自向第三人提供担保的或债务承担等具有担保效果的类似行为。

7.4 甲方拒绝或阻碍乙方对借款使用情况实施监督检查的。

7.5 甲方不履行本合同约定的任何一项义务；或违反本合同约定的任何一项陈述或保证。

7.6 甲方卷入或可能卷入重大的诉讼或仲裁程序及其他法律纠纷，遭受重大经济损失、财务状况恶化，或者其他可能影响偿债能力的事件，或出现影响还款能力的其他情形。



### 第八条 违约责任

8.1 甲方未按合同约定日期偿还借款、支付利息及其他应付费用，除必须按数支付外，需向乙方支付欠付金额每日1‰的违约金。

8.2 甲方未按合同约定用途使用借款的，按照挪用的金额和实际天数计算须向乙方支付每日1‰的违约金。

8.3 本合同签订后，未经乙方书面同意，甲方单方解除本合同，须按照本合同项下借款金额的30%向乙方支付违约金。

8.4 因甲方违约致使乙方采取诉讼方式实现债权的，甲方应承担乙方为实现债权而支付的全部相关费用，该费用包括但不限于催收费、诉讼费、评估费、保全费、公告费、律师费、执行费、差旅费等。

### 第九条 通知送达

9.1 本合同项下约定的或履行本合同而进行的任何通知以下列约定为送达日：

9.1.1 如为信件，以邮戳所示日期为送达日。

9.1.2 如为传真，发传真日为送达日。

9.1.3 如为专人递送，收件人签收日为送达日。

9.1.4 如为快递公司递送，以寄件人交寄后满3日为送达日。

9.2 双方在本合同中填写的联系地址即为其有效的通讯地址。

### 第十条 合同的生效、变更、修改、效力及争议解决

10.1 本合同自甲乙双方法定代表人（或授权代表）签字盖章之日起生效。

10.2 本合同生效后，任何一方不得擅自变更或修改。如需变更或修改本合同，应经双方协商一致，并达成书面补充协议。

10.3 本合同项下的附件，以及与履行本合同有关的协议等，均为本合同不可分割的组成部分，与本合同具有同等的法律效力，但本合同另有约定的除外。

10.4 本合同未尽事宜，甲乙双方可另行签订补充协议，与本合同不相一致的，以补充协议为准。

10.5 本合同一式贰份，甲乙双方各持壹份，均具有同等法律效力。

10.6 本合同的订立、效力、解释、履行、修改和终止以及争议的解决均适用中国法律。在履行合同过程中发生的一切争议，各方应友好协商解决；协商不成的，各方均有权向北京仲裁委员会提起仲裁。

### 第十一条 保密

11.1 本合同的全部条款及本合同本身均为保密信息，各方不应向任何第三方披露，但与该项目有关的高级职员、董事、雇员、代理人和专业顾问以及甲方、乙方股东除外；如果各方根据法律的要求而需要向政府、公众或者股东披露有关本文件的信息或者将本文件交至有关机构备案则属例外。

11.2 不论本合同是否变更、解除或终止，本条款均有法律效力。

### 第十二条 特别约定

自本合同第三条第3.2款约定的事项全部完成之日（按时间先后顺序，以最晚完成事项之日为准）起，乙方应当在30个工作日（以下称"出借期限"）内完

成本合同项下的借款出借义务。如乙方未能在出借期限内完成本合同项下的借款出借义务，则本合同终止且双方互不承担任何责任。但甲方同意顺延出借期限的情况除外。

**第十三条　其他约定**

13.1　在本合同有效期内，甲方名称、通信地址、联系方式等发生变化而未通知乙方的，乙方依据本合同所载资料向甲方发送的所有文书视同送达。

13.2　甲方有逃避乙方监督、拖欠贷款本金及利息、恶意逃废债务等行为时，乙方有权将该种行为向有关单位通报、报案，并可在新闻媒体上公告。

**第十四条　重要说明**

对于本合同项下全部条款，出借人已经向借款人进行了充分的解释和说明，借款人表示已全面、准确的理解，并知悉任何欺诈、违约行为均要承担相应的法律责任。总之，签约双方一致表示对本合同项下全部条款含义认识一致。

（以下无正文）







[本页无正文，为《借款合同》（合同编号：ZTDC-JKHT1711-06）的签署页]

本合同由以下各方签署：

甲方：（盖章）

法定代表人（或授权代表）（签字）

2017 年 11 月 16 日

乙方：（盖章）

法定代表人（或授权代表）（签字）

2017 年 11 月 16 日

# Loan Contract

**Contract Number: ZTDC-JKHT1711-06**

**The Borrower:**
**Shanghai Fukong Interactive Entertainment Co., Ltd. ("Party A" hereinafter)**
Unified Social Credit Code: 913100006072187512
Legal Representative: Wang Xiaoqiang
Address for Service: Building 2, No.437 Guangyue Road, Hongkou District, Shanghai City
Tel.: 021-68823766

**The Lender:**
**Zhongtie Dacheng (Zhuhai) Investment Management Co., Ltd. ("Party B" hereinafter)**
Unified Social Credit Code: 91440400MA4W9CPP9A
Legal Representative: Cen Jing
Address for Service: #1906, Tower A, Jinhai Wealth Commercial Center, No.21 Guangqu Road, Chaoyang District, Beijing City
Tel.: 010-59693120

(In the *Loan Contract* ("This Contract" hereinafter) signed by the above two Parties, the two Parties are collectively referred to as "Parties" and separately as "Party".)

In accordance with relevant laws and regulations of the People's Republic of China, in principles of equality, free will, honesty and credibility, through good faith negotiation, both Parties conclude this Contract in reference to Party A's borrowing from Party B, which shall be jointly complied with.

**Article I Party A's Warranties and Commitments**
1.1 Party A is a legal entity with full capacity for civil conduct, and is able to independently bear civil liability.
1.2 All the declaration of Party A's intention under this Contract is genuine.
1.3 Party A's usage of the loan described hereunder is completely legitimate.
1.4 All documents and certificates submitted by Party A to Party B are genuine, legal and effective.

**Article II Loan amount, Interest Rate, Usage, Period, and Interest Payment/Principal Repayment Modes**
2.1 Loan Amount:
No less than ￥30,000,000.00 (Thirty Million CNY).
(The actual loan amount shall be subject to the one specified on the payment voucher of Party B, which constitutes the indispensable part of this Contract with the same legal effect).
2.2 Interest Rate: 20% annually.
2.3 Usage: Circulating fund.
2.4 Period: 9 months since the date all issues described in Paragraph 3.2 of Article III hereunder are completed and Party B lends the loan through the bank (namely the date of lending) (note: each month shall be composed of 30 calendar days; the same hereinafter).
In the event that the starting day of the loan period stipulated under this Contract differs from the one specified on the voucher, the latter shall prevail, based on which the maturity date of loan shall be adjusted accordingly.

Shanghai Fukong Interactive Entertainment Co., Ltd. (seal on the perforation)
Zhongtie Dacheng (Zhuhai) Asset Management Co., Ltd. (seal on the perforation)

2.5 Interest payment mode:

2.5.1 Party A shall pay to Party B the loan interest in accordance with the following arrangements:

a. Party A shall pay to Party B the interest of the 1st-month loan 1 month after the date of lending, and pay that of the 2nd-month loan 2 months after the date of lending. Such mode applies to all the following loan interest payment.

b. In the event that Party A repays the principal beforehand 6 months after the date of lending as stipulated by Paragraph 4.2 of Article IV hereunder, the date of such repayment shall be the final day for interest calculation.

2.5.2 Party B shall, after receipt of the interest paid by Party A, issue the corresponding voucher to Party A; if Party A requests the valid invoice, the tax incurred thereby shall be solely assumed by Party A.

2.5.3 In the event of loan period extension, the interest payment mode shall be otherwise determined by both Parties.

2.6 Principal repayment mode:

2.6.1 Party A shall repay the principal upon expiry of the loan period.

2.6.2 In the event of loan period extension, the date of principal repayment shall be correspondingly extended based on the agreement on changes of loan amount and period.

**Article III Loan Issuance**

3.1 Loan issuance:

3.1.1 Party A shall, prior to Party B's loan issuance, inform Party B of details of the designated collection account by delivering the *Letter of Entrusted Collection* in written form. The date Party B remits to Party A's designated account shall be the value date, and Party B's payment voucher for the loan shall serve as the effective evidence of loan issuance, principal repayment and interest payment hereunder.

3.1.2 Party B would be regarded as having performed its duties hereunder the moment it remits to Party A's designated account as specified in the *Letter of Entrusted Collection*.

3.2 Party B may issue the loan only after all conditions below are met:

(1) No contract-breaching event or conduct occurs to Party A;

(2) This Contract is signed by both Parties and comes into effect.

**Article IV Principal Repayment and Interest Payment**

4.1 Party A shall fully repay the loan principal and pay the loan interest to the bank account designated by Party B on the date of repayment/payment agreed hereunder, and Party B shall separately inform Party A of details of such account.

4.2 Party A shall be entitled to repay the principal and pay the interest beforehand 6 months after the date of lending.

**Article V Party A's Rights and Duties**

5.1 Party A shall be entitled to withdraw and use the loan as per period, amount and usage agreed hereunder.

5.2 Party A must be subject to the usage requirement hereunder, and appropriation for any other purpose is prohibited.

5.3 Party A must repay the loan principal and pay the loan interest as agreed hereunder.

5.4 Party A may not postpone or refuse to perform the repayment duties for reasons of any dispute against any third Party.

5.5 Party A shall unconditionally accept Party B's check and supervision on the loan usage status.

5.6 Prior to Party A's performance of all duties hereunder, Party A may not sell or dispose any prime assets under its name or settle any debts thereof in advance without Party B's written consent.

5.7 Party A may not transfer any of its duties for repayment or other issues hereunder to a third person without Party B's written consent.

5.8 Party A shall send written notice to Party B at least 5 days before in respect of the following issues, which may not be carried out before all the debts hereunder are paid off:

Shanghai Fukong Interactive Entertainment Co., Ltd. (seal on the perforation)

Zhongtie Dacheng (Zhuhai) Asset Management Co., Ltd. (seal on the perforation)

(1) Party A sells, gifts, rents, lends, transfers, mortgages, pledges or dispose otherwise the prime assets under its name;

(2) Party A takes any guarantee-natured action such as providing for any third Party any guarantee or undertaking any debt liability.

5.9 Party A shall, in 3 days after (detection of) occurrence of any event below, notify Party B in writing:

(1) Party A changes domicile, mailing address, contact information, etc.;

(2) Party A is involved in any grave litigation or arbitration, or any enforcement action (such as property preservation) is taken against Party A's prime assets or the guaranty hereunder;

(3) Party A signs any contract that has significant influence on its financial position;

(4) Party A is involved in any illegal activity.

**Article VI Party B's Rights and Duties**

6.1 Party B shall be entitled to check and supervise on the loan usage status.

6.2 Party B shall be entitled to recover the loan and collect the interest, interest penalty, liquidated damages or any other expenses payable by Party A as agreed hereunder.

6.3 Party B shall be entitled to urge repayment of Party A in case of supervision evasion and default on principal and interest.

6.4 Party A shall settle the creditor's right of Party B in the following sequence, unless otherwise agreed:

(1) Fees for realization of creditor's right and guaranteed right (including but not limited to fees for collection, litigation, assessment, preservation, announcement, lawyer, implementation and travel); (2) Interest penalty; (3) Liquidated damages; (4) Interest; (5) Principal.

6.5 Party B shall promptly issue the loan as agreed hereunder, unless delayed for reasons of Party A.

6.6 During the performance of this Contract, in case of any changes of Party B's mailing address (such as domicile and contact number), Party B shall notify Party A in 3 days after such changes.

6.7 Within the validity hereof, Party B shall be entitled to have its creditor's right hereunder wholly or partially transferred without Party A's consent, but shall give corresponding written notice to Party A. Party A shall continue to perform all its duties hereunder despite such transfer.

6.8 Party B shall be entitled to exercise other rights legally permitted and agreed hereunder.

**Article VII Acceleration of Maturity**

Within the validity hereof, in occurrence of any of the following circumstances, Party B shall be entitled to declare the loan hereunder to be due and require Party A to immediately repay the loan principal and settle the loan interest.

7.1 Party A offers false certificates and documents to Party B.

7.2 Party A changes the usage of any portion of the loan without Party B's authorization.

7.3 Party A takes any guarantee-natured action such as providing for any third Party any guarantee or undertaking any debt liability without Party B's authorization.

7.4 Party A refuses or prevents Party B from carrying out supervision and check on the loan usage status.

7.5 Party A fails to perform any of the duties agreed hereunder, or Party A breaches any of the statements or warranties agreed hereunder;

7.6 Party A is (likely to be) involved in any grave litigation, arbitration or other legal disputes, suffers significant economic loss or financial position deterioration or any other solvency-influencing event, or meets with any other situation that influences the repayment capacity.

Shanghai Fukong Interactive Entertainment Co., Ltd. (seal on the perforation)

Zhongtie Dacheng (Zhuhai) Asset Management Co., Ltd. (seal on the perforation)

**Article VIII Liability for Breach of Contract**

8.1 If Party A fails to repay the principal, pay the interest and settle other payables on the date agreed hereunder, Party A must, in addition to the full payment thereof, pay to Party B 1‰ of the balance due per day otherwise as liquidated damages.

8.2 If Party A fails to use the loan as per required usage hereof, Party A must pay to Party B 1‰ of the appropriated amount per day as liquidated damages.

8.3 After this Contract is signed, if Party A unilaterally dissolves this Contract without Party B's consent, Party A must pay to Party B 30% of the loan amount hereunder as liquidated damages.

8.4 If Party A breaches this Contract and leads to Party B's filing of a lawsuit for realization of the creditor's right, Party A shall assume all expenses incurred by Party B in such course, which includes without limitation the fees for collection, litigation, assessment, preservation, announcement, lawyers, implementation, travel, etc.

**Article IX Notice Delivery**

9.1 The date of delivery of any notice agreed hereunder or necessitated during the contract performance are subject to the following clauses:

9.1.1 For mails, the date of delivery shall be the one shown on the postmark.

9.1.2 For faxes, the date of delivery shall be the one of faxing.

9.1.3 For delivery by hand, the date of delivery shall be the one the recipient signs for receipt.

9.1.4 For delivery by express, the date of delivery shall be 3 days after the one of delivery.

9.2 The contact addresses filled hereunder by both Parties shall meanwhile serve as their effective mailing ones.

**Article X Validation, Alteration, Modification, Effectiveness and Dispute Resolution**

10.1 This Contract shall come into effect since the date the legal representatives/authorized signatories of both Parties sign and stamp hereon.

10.2 After its validation, neither Party may make any alteration or modification without authorization. Any necessary alteration or modification hereof shall be agreed upon by both Parties in the form of a written supplementary agreement.

10.3 All annexes hereof and all documents relevant hereto shall be deemed as indispensable parts of this Contract with the same legal effect, unless specified otherwise.

10.4 For any issues unmentioned hereunder, both Parties may sign the supplementary agreement separately; if there is any discrepancy between this Contract and the supplementary agreement, the latter shall prevail.

10.5 This Contract is in two copies, both with the same legal effect, and each Party shall keep one respectively.

10.6 The conclusion, effectiveness, explanation, performance, modification, termination and dispute resolution shall be subject to Chinese laws. All disputes arising from the contract performance shall be firstly settled through good-faith negotiation; if such negotiation fails, either Party may be entitled to initiate arbitration to Beijing Arbitration Commission.

**Article XI Confidentiality**

11.1 All clauses hereunder as well as this Contract shall be regarded as the confidential information, and neither Party may disclose it to any third Party (exclusive of the senior officers, directors, employees, agents and professional consultants involved herein as well as shareholders of both Parties); however, it would be acceptable if either Party is required by law to disclose the information hereof to the government, the general public or the shareholders, or submit this Contract to relevant institutions for filing.

11.2 This clause shall be of eternal legal effect no matter whether this Contract would be altered, dissolved or terminated subsequently.

**Article XII Special Provision**

Party B shall, since the date all issues described in Paragraph 3.2 of Article III hereunder are completed (subject to the date on which the final issues is completed), complete the loan-lending duty hereunder within 30 business days ("lending period" hereinafter). If Party B fails to perform the said duty, this Contract shall be terminated, in which case neither Party needs to be accountable to the other (except the situation that Party A agrees on lending period extension).

Shanghai Fukong Interactive Entertainment Co., Ltd. (seal on the perforation)

Zhongtie Dacheng (Zhuhai) Asset Management Co., Ltd. (seal on the perforation)

**Article XIII Miscellaneous**

13.1 Within the validity hereof, if there are any changes of Party A's name, mailing address or contact information without being notified to Party B, then all instruments sent by Party B to Party A as per contact details specified hereunder would be deemed as delivered.

13.2 In cases that Party A evades Party B's supervision, defaults on the loan principal and interest, and attempts to evade repayment obligations, Party B shall be entitled to report such cases to relevant organs and have them announced through the news media.

**Article XIV Important Note**

The Lender has made sufficient explanations and notes to the Borrower regarding all clauses hereunder, and the Borrower has expressed full and accurate understanding thereof and acknowledged that any conduct of fraud or breach of contract would lead to assumption of corresponding legal liabilities. In conclusion, both the sign Parties have reached the consistent understanding of definitions of all clauses hereunder.

(No Context Hereinafter)

Shanghai Fukong Interactive Entertainment Co., Ltd. (seal on the perforation)

Zhongtie Dacheng (Zhuhai) Asset Management Co., Ltd. (seal on the perforation)

[This page contains no context, and serves as the signing page of the Loan Contract (Contract Number: ZTDC-JKHT1711-06)]

This Contract is signed by the following Parties:



Party A (seal): Shanghai Fukong Interactive Entertainment Co., Ltd.



Legal Representative/Authorized Signatory (signature): Wang Xiaoqiang

November 16, 2017



Party B (seal): Zhongtie Dacheng (Zhuhai) Asset Management Co., Ltd.



Legal Representative/Authorized Signatory (signature): Cen Jing

November 16, 2017

# 证明书

我，何焘，律师执业证号：【1110120080741502】，作为中铁大成（珠海）投资管理有

限公司委托的律师，特此证明合同编号：ZTDC-JKHT1711-06《借款合同》的复印件和原件

一致，都是真实且有效的文件。

姓名：（签名）

职称：律师

律师事务所：北京中银律师事务所

2021、6、21

# CERTIFICATE

I, **TAO HE**, as the counsel for Zhongtie Dacheng (Zhuhai) Investment Management Co., Ltd.,

Chinese bar license No. [1110120080741502], hereby certify that the annexed copy of *Loan*

*Contract (Contract Number: ZTDC-JKHT1711-06)* has been compared with the original

document in my possession or control, and that the same is true copy of said original.

[signature]

Name: *Tao He*

Title: lawyer

Firm: Beijing Zhong Yin law Firm

2021. 6. 21

## AFFIDAVIT OF YUNAN ZHANG

I, **YUNAN ZHANG,** Translator, from TalkingChina Translation Services Co., Ltd. of Rm. 8E,

Xin'an Building (E), No. 200 Zhengning Rd., Shanghai, P.R.C. swear:

1.     I am proficient in both Mandarin and English. Mandarin is my native language and I have
       been speaking English for 6 years.

2.     I learned English from middle school to college in China. I obtained a Master's Degree in
       Translation And Interpreting from a university in Shanghai, China in 2015.

3.     I have been asked to confirm that the translation of the following document is an accurate
       translation from Mandarin into English:

       *Loan Contract  (Contract Number: ZTDC-JKHT1711-06)*

4.     I can confirm that the above original document has been translated accurately from
       Mandarin into English, both versions of which are attached to this affidavit.


YUNAN ZHANG

DATE: 06/21/2021


TalkingChina Translation Services Co., Ltd.