Conal Doyle, Esq., SBN 227554
Stephen Beke, Esq. SBN: 290972
DOYLE LAW, APC
280 S Beverly Drive, Penthouse
Beverly Hills, CA 90212
T: (310) 385-0567

Rongping Wu, Esq. (*Pro Hac Vice*)
DGW KRAMER LLP
One Rockefeller Plaza
10th Floor, Ste. 1060
New York, NY 10020
T: (917) 633-6860
F: (917) 630-6183

Attorneys for Petitioner
ZHONGTIE DACHENG (ZHUHAI)
INVESTMENT MANAGEMENT CO., LTD.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZHONGTIE DACHENG (ZHUHAI) INVESTMENT MANAGEMENT CO., LTD., a China Company<br><br>Petitioner,<br><br>vs.<br><br>YAN, JINGGANG, an individual, and LIANG, XIUHONG, an individual,<br><br>Respondents. | Case No.: 8:22-cv-00461-SSS-ADS<br><br>**AMENDED PETITION TO CONFIRM ARBITRATION AWARD AND FOR ENTRY OF JUDGMENT** |

- 1 -

Petitioner Zhongtie Dacheng (Zhuhai) Investment Management Co., Ltd. ("Zhongtie" or "Petitioner"), by and through its undersigned attorneys, hereby respectfully petitions this Court for an order and judgment confirming a final, binding arbitration award issued in Beijing, China on March 24, 2020, against Respondents Yan Jinggang ("Yan"), Liang Xiuhong ("Liang," together with Yan the "Respondents"), and two companies which Yan owns and controls: Shanghai Fukong Interactive Entertainment Co., Ltd., and Shanghai Zhongji Enterprise Group Co., Ltd. This Petition is supported by an accompanying Amended Memorandum and Amended Declaration of Rongping Wu, dated October 11, 2022 (the "Wu Decl."), which is incorporated herein by reference). In support of this amended Petition, Zhongtie respectfully states as follows:

## NATURE OF THE PROCEEDING

1. This is a petition pursuant to 9 U.S.C. § 207 of the Federal Arbitration Act (the "FAA") and Article III of the 1958 Convention for the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), requesting that this Court: (a) confirm and enforce the March 24, 2020, arbitration award (the "Award") issued by an arbitral tribunal (the "Tribunal") comprised of three arbitrators and constituted under the 2015 Arbitration Rules of the Beijing Arbitration Commission; (b) issue a judgment in Petitioner's favor against the Respondents as provided for in the Award; (c) award the Petitioner the costs of this confirmation proceeding; and (d) retain jurisdiction over this matter until the Respondents have fully complied with the Award.

2. The Award concluded Beijing Arbitration Commission (the "Commission") case number (2018) J.Z.A.Z. No. 4111 (the "Arbitration"), which resolved a dispute between Zhongtie, Yan, Liang, Shanghai Fukong Interactive Entertainment Co., Ltd., and Shanghai Zhongji Enterprise Group Co., Ltd. The Award was issued number (2020) J.Z.C.Z. No. 0455.

3. Zhongtie respectfully requests that this Court confirm the Award and

incorporate its terms into a judgment in favor of Zhongtie. Zhongtie also seeks to recover costs and fees associated with confirming the Award, and any other and such further relief as this Court may find just and proper.

## PARTIES

4. The Petitioner, Zhongtie Dacheng (Zhuhai) Investment Management Co., Ltd., is a corporation organized under the laws of the People's Republic of China ("PRC"), with its principal place of business located at (Centralized Office Area) Room 105-27185 No. 6 Baohua Road, Hengqin New Area, Zhuhai, Guangdong Province, PRC. (Wu Declaration ¶ 3.) Zhongtie is an investment management company, in the business of, among other things, equity investments, debt investments, mezzanine investments, and private equity investments, in the PRC and elsewhere. (*Id*.)

5. The Petitioner is informed and believes, and on that basis alleges, that Respondents are husband and wife communally residing within the Central District of California, with their primary residence located at 30 Sea Glass, Newport Coast, in Orange County, California, 92657, and are otherwise *sui juris*. Respondent Yan is the sole director and shareholder of the corporate respondents to the Arbitration, Shanghai Fukong Interactive Entertainment Co., Ltd., and Shanghai Zhongji Enterprise Group Co., Ltd., (together, the "Corporate Parties"), and it was in that capacity that Respondent Yan executed a personal guaranty agreement, and caused his spouse Respondent Liang to do the same, with Petitioner. Petitioner is further informed and believes that there exists such a unity of interest between Respondents and the Corporate Parties that their separate identities have ceased to exist, and it would result in injustice to treat Respondents, on the one hand, and the Corporate Parties, on the other, as separate actors.

## JURISDICTION AND VENUE

6. Petitioner's right to confirm the Award arises under the New York Convention. Chapter 2 of the FAA, 9 U.S.C. § 201, *et seq*., codifies and applies the New York Convention to award-recognition actions brought before the courts of the

United States.

7. The Court has original subject matter jurisdiction over this action under 9 U.S.C. § 203, which provides that "[t]he district courts of the United States . . . shall have original jurisdiction over [any] action or proceeding falling under the Convention." This proceeding falls under the New York Convention because it arises out of a commercial dispute between parties that are not citizens of the United States. (See 9 U.S.C. § 202 ["an arbitral award arising out of a legal relationship . . . which is considered as commercial . . . falls under the Convention" unless the relationship is wholly between citizens of the United States"].) Moreover, the Award was made in the PRC, which is a signatory and party to the New York Convention.

8. 28 U.S.C. § 1331 also gives the Court subject-matter jurisdiction over this proceeding, because this proceeding is a "civil action arising under the . . . laws, or treaties of the United States."

9. The Court has personal jurisdiction over the Respondents, as, upon information and belief, the Respondents currently reside in Orange County, California, within the Central District of California.

10. Venue is proper in this Court under 9 U.S.C. § 204 and 28 U.S.C. § 1391(b)(1), due to the fact that this a proceeding arising under the New York Convention, and the Respondent resides in this district.

## FACTUAL BACKGROUND

### A. The Underlying Loan and Dispute

11. The dispute underlying the Arbitration, and the Award itself, is rooted in a lending agreement entered into by the Petitioner and one of the Corporate Parties, Shanghai Fukong Interactive Entertainment Co., Ltd. (the "Borrower"), on November 16, 2017 (the "Loan"). In order to further secure its rights as the lender under the Loan, Petitioner executed separate Performance Joint Liability Guarantee Letters ("Personal Guarantees") with the Respondents and the Corporate Parties (together, the "Guarantors").

12. The Loan provided that the Borrower would borrow RMB 30,000,000 from Petitioner, at an annual interest rate of 20%, with the loan term set to expire 9 months after the date Petitioner issued the loan principal to the Borrower. (Wu Declaration ¶¶ 4 – 6, and **Exhibit A**.) Repayment terms required that the Borrower pay monthly interest during the term of the Loan, and that the principal would be due after the expiration of the term. (*Id*.) The Loan provided that any dispute between the parties was to be resolved via arbitration:

> (i) The Loan shall be governed by the laws of the PRC;
>
> (ii) Any dispute arising from performance of the Loan are to be dealt with through good-faith negotiation between the parties, and if such negotiation fails, either party would be entitled to initiate arbitration before the Commission.

(Exhibit A to Wu Declaration, Art. 10.6.)

13. On the same day, Respondents executed the Personal Guarantees with the Petitioner. The Personal Guarantees provided that the Guarantors assumed joint and several liability for the Borrower, which included loan principal, interest, damages, expenses, and other costs payable by the Borrower under the Loan. (Wu Declaration ¶¶ 7 – 9, and **Exhibit B**.) The period of the Personal Guarantees was two years from the date of expiration of the Loan term. (*Id*.) Respondents affixed their personal seals and signatures to the respective Personal Guarantees. (See Exhibit B to Wu Declaration).

14. At the time of execution of the Loan and Personal Guarantees, and continuing through the Arbitration, Respondent Yan was the actual controller of the Borrower, and held 95% of the equity of the corporate Guarantor, Shanghai Zhongji Enterprise Group Co., Ltd. (See Wu Declaration ¶ 10.)

15. On December 22, 2017, Petitioner transferred the Loan principal, a total of RMB 30,000,000, to the Borrower, in accordance with the terms of the Loan Contract and the instructions of the Borrower. (See Wu Declaration ¶ 11.)

Specifically, the Borrower executed an "Entrusted Collection Letter" with a third-party entity that instructed Petitioner to transfer the loan principal to an account held by that third-party entity. (*Id.*)

16. The expiration date for the Loan Contract, dependent upon the day Petitioner transferred the loan principal, was September 22, 2018. (*Id.*)

17. Following the transfer of loan principal, a dispute arose between the parties concerning the parties' rights and obligations under the Loan Contract, concerning the failure of the Borrower to repay the loan principal according to the terms within the Loan Contract. (*Id.* ¶ 12.)

18. The Borrower failed to repay the interest as specified within the Loan Contract and ultimately failed to repay any of the principal by September 22, 2018. (*Id.*)

19. On May 28, 2018, in the wake of Borrower's ongoing failure to remit the periodic interest payments required by the Loan Contract, Petitioner sought to initiate arbitration proceedings against the Borrower and the Guarantors in accordance with the Loan Contract before the Beijing Arbitration Commission (the "Commission"). It was assigned case no. (2018) J.Z.A.Z. No. 1421 (the "Arbitration Request"). (*Id.* ¶ 13.)

20. On July 17, 2018, Petitioner transferred its interest in RMB 15,000,000 Yuan of the loan principal owed by the Borrower and guaranteed by the Respondents, to a third-party (the "Recoupment Agreement"). The third party would pay Petitioner in two tranches of RMB 7,500,000 Yuan each. As part of the Recoupment Agreement, Petitioner agreed to request the withdrawal of the Arbitration Request within 5 business days of receiving the first transfer from the third party. The third party would then transfer the last tranche within 5 business days of receiving notice of the submission of the request to withdraw. The tranches were received on September 29, 2018, and November 28, 2018, respectively, and the Arbitration Request withdrawn. (*Id.* ¶¶ 14 & 15.)

21. Following the request for withdrawal made by the Petitioner in accordance

with the Recoupment Agreement, the Commission revoked the matter on November 20, 2018. (*Id.* ¶ 15.)

## B. The Arbitration

22. The same day, November 20, 2018, Petitioner initiated another arbitration proceeding against the Borrower, the Respondents, and the other corporate Guarantor, to recover the remaining RMB 15,000,000 in principal. The Commission accepted the matter and assigned it case no. (2018) J.Z.A.Z. No. 4111 (the "Arbitration"). (*Id.* ¶ 16.)

23. The Loan Contract and Personal Guarantees all contained agreements to arbitrate any disputes arising from the Loan Contract before the Beijing Arbitration Commission. As was mentioned above, these agreements were executed on November 16, 2017. (See Exhibit B to Wu Declaration.) The Personal Guarantees contain the Agreement to Arbitrate between Petitioner and Respondents, which provides:

>     (i)   The Guarantees shall be governed by the laws of the PRC;
>     (ii)  Any disputes arising from the performance of the Guarantees shall be settled in the same way as agreed under the Loan.

(*Id.* ¶ 9, and Exhibit B, Art. 11.)

24. The Arbitration was governed by the ordinary procedures contained within the "Arbitration Rules of the Beijing Arbitration Commission" (the "Rules"), as implemented by the Commission since April 1, 2015. (*Id.* ¶ 17.)

25. On January 25, 2019, the Borrower filed an objection with the Commission regarding jurisdiction. On June 11, 2019, the Commission issued a decision authorizing the Tribunal to make a decision regarding the jurisdictional issue presented by the Borrower. Because the parties did not select a panel in accordance with the schedule required by the Rules, the Commission chose a three-person Tribunal and assigned them to this matter on the same day, June 11, 2019. The Commission served notice of the formation of the Tribunal and the notice of the hearing date set for July 11, 2019, to Petitioner, Borrower, Respondents, and the corporate Guarantor. No objections were raised prior to the hearing date by any parties. (*Id.* ¶ 18.)

26. Despite being duly notified of the hearing by the Commission, Respondents did not appear on July 11, 2019. (*Id.* ¶ 19.)

27. At the hearing, the Borrower sought the recusal of one of the chosen arbitrators, and consequently the Tribunal was suspended. After briefing the issue, on November 5, 2019, the Commission rejected the Borrower's arguments for recusal and retained the chosen arbitrator, setting the matter for another hearing on December 17, 2019. (*Id.* ¶ 20.)

28. On December 17, 2019, the Tribunal held a hearing at which the Petitioner and the Borrower appeared but, despite being duly notified, the Respondents failed to appear for once again. (*Id.* ¶ 21.)

29. The Tribunal tried the matter in accordance with the Rules and heard the parties' arguments, facts, and evidence. Additionally, the Tribunal provided the parties with an opportunity to cross-examine and challenge the presented evidence. Moreover, the Tribunal conducted an investigation and independent verification of the facts as alleged by the parties. Finally, the Tribunal extended the time within which to conduct the proceedings in order to afford more opportunity to the parties that did not appear to make an appearance and participate. (*Id.* ¶ 22.)

**C.     The Award**

30. After almost four months of deliberation, on March 24, 2020, the Tribunal delivered a final award in favor of the Petitioner. The Award was issued in Mandarin, the language of the Arbitration, and assigned number (2020) J.Z.C.Z. No. 0455. Attached to the Wu Declaration as **Exhibit C** is a notarized copy of the Award, along with a certified and notarized English translation thereof. The Award provides in part:

- Pursuant to the Loan and evidence presented by the parties, the Borrower is liable to Zhongtie for the RMB 15,000,000 in unpaid loan principal;

- Pursuant to the Loan and evidence presented by the parties, as of November 20, 2018, the Borrower was liable to Zhongtie for the RMB

        5,316,700 in unpaid loan interest;

- Pursuant to the Loan, the Borrower is liable to Zhongtie for loan interest on the unpaid principal, calculated from November 21, 2018, at 20% per annum, until the date the unpaid principal has been repaid;
- Borrower is liable for attorneys' fees of RMB 10,000 and the arbitration fee of RMB 149,183.50; and
- Respondents and the corporate Guarantor, by virtue of the Personal Guarantees executed between them and the Petitioner, were jointly and severally liable to Petitioner for the above enumerated amounts owed by the Borrower.

(See Wu Declaration ¶ 23, and Exhibit C.)

31. No proceedings have been commenced in the PRC for the purpose of correcting or interpreting the Award, or to otherwise contest its validity. (*Id.* ¶ 24.)

32. In accordance with the Rules, the Award became final and enforceable on the date it was issued by the Tribunal, March 24, 2020. The amounts are now long overdue and payable to the Petitioner. (*Id.*)

33. The current amount outstanding and payable by the Respondents under the Award is RMB 20,475,883.50 plus any accrued per diem interest of RMB 8,219.18 beginning on November 21, 2018, for a total accrued interest in the amount of RMB 9,920,547.95 as of March 11, 2022. In total, as of March 11, 2022, Respondents owe Petitioner RMB 30,396,431.45 under the Award. (*Id.* ¶ 26.)

34. To date, the Respondents, the Borrower, and the corporate Guarantor have failed to pay any amount pursuant to the Award. (*Id.* ¶ 25.)

35. As demonstrated by the foregoing facts and the following analysis, confirmation of the Award is appropriate, and no ground exists under Article V of the New York Convention to vacate or otherwise refuse confirmation of the Award.

## ARGUMENT

36. The Award is a well-reasoned award, issued by respected jurists in a

proceeding in which all parties bound by the Award had a full and ample opportunity to participate.

37. The Federal Arbitration Act ("FAA") provides that "[w]ithin three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration." (9 U.S.C. § 207.) Given that the Award was rendered on March 24, 2020, this Petition to recognize and enforce the Award is timely under the FAA.

38. Confirmation of the Award is governed by the New York Convention (the "Convention"), as implemented by Chapter 2 of the FAA, 9 U.S.C. § 201, *et seq*. The Award is an "arbitral award arising out of a legal relationship . . . which is considered as commercial," and therefore it falls within the purview of the Convention. (See 9 U.S.C. § 202.)

39. According to the Convention and the FAA, a district court's role in reviewing an arbitral award is strictly limited: "[t]he court <u>shall</u> confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." (9 U.S.C. § 207 [emphasis added].) The Ninth Circuit has reiterated that the role of the district courts is strictly limited. "It is well-settled that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration . . . any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . . " (*Balen v. Holland Am. Line, Inc.*, 583 F.3d 647, 652 (9th Cir. 2009) [internal citations omitted].)

40. Absent the existence of one of the specified grounds for refusal or deferral as enumerated in the Convention, an arbitral award <u>must</u> be recognized and enforced. The grounds for refusal or deferral are contained within Article V of the Convention:

> 1. The parties to the [arbitration] agreement referred to in article II were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law

of the country where the award was made (Article V(1)(a));

2. The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case (Article V(1)(b));

3. The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration cannot be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced (Article V(1)(c));

4. The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or failing such agreement, was not in accordance with the law of the country where the arbitration took place (Article V(1)(d));

5. The award has not yet become binding between the parties, or has not been set aside or suspended by a competent authority of the country in which, or under the law of which, the award was made (Article V(1)(e));

6. The subject of the dispute cannot be settled by arbitration under the law of the State in which recognition and enforcement is requested (Article V(2)(a)); or

7. The recognition or enforcement of the award would be contrary to the public policy of the State in which recognition and enforcement is requested (Article V(2)(b)).

41. Here, none of the grounds above for refusal to recognize or enforce an arbitral award are present. The plain language of the respective articles of the Loan and the Personal Guarantees make clear that Petitioner and the Respondents agreed that certain disputes could be resolved by arbitration. (See Exhibit A to Wu Declaration, Art. 10.6, *and* Exhibit B to Wu Declaration, Art. 11.) Moreover, the Respondents have failed to file a motion to vacate the first award within the timeframe specified by the

FAA. (See 9 U.S.C. § 12.)

42. Nothing in the laws of the United States prohibits adjudicating the dispute between the parties, which arises out of a failure to perform under a commercial loan contract or liability under a personal guaranty. Rather, United States jurisprudence has long favored arbitration for the resolution of international commercial disputes. (See *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985) [endorsing "emphatic federal policy in favor of arbitral dispute resolution," which "applies with special force in the field of international commerce"].)

43. The Tribunal was composed by and followed the Rules of the Commission, as was contemplated by the parties' agreements to arbitrate. The Award is binding and has not been set aside in the PRC, or upon information and belief, in any other jurisdiction. Finally, confirming the Award offends no public policy of the United States.

44. Based on the foregoing, the Award should be confirmed in all respects so that the Petitioner may seek enforcement of the Award and immediately receive the monetary sums it is entitled to receive.

45. The party opposing confirmation of an arbitral award under the New York Convention bears the burden of proving that such a ground for refusal exists and applies. (See *Polimaster Ltd. v. RAE Syst., Inc.*, 623 F.3d 832, 836 (9th Cir. 2010) ["the [respondent] has the burden of showing the existence of a New York Convention defense. The burden is substantial because the public policy in favor of international arbitration is strong, and the New York Convention defenses are interpreted narrowly."] (internal citations omitted).) The Respondents cannot meet this burden.

## COUNT I

## (CONFIRMATION OF AWARD UNDER 9 U.S.C. § 207)

46. Zhongtie repeats, reaffirms, and incorporates by reference each and every preceding paragraph above as if fully set forth herein.

47. The United States in a contracting party to the New York Convention, as

is the People's Republic of China.

48. The Award is governed by the New York Convention (as that treaty is made applicable in this proceeding under Chapter 2 of the FAA, 9 U.S.C. § 201, *et seq.*) because the Award arises out of a commercial contract dispute between Zhongtie and the Respondents Yan and Liang, none of whom are citizens of the United States.

49. Article IV of the New York Convention provides that the party applying for confirmation of an award "shall, at the time of the application, supply: (a) [t]he duly authenticated original award or a duly certified copy thereof; [and] (b) [t]he original agreement [to arbitrate] or a duly certified copy thereof." A duly authenticated copy of the Award, in Mandarin and English, is attached as Exhibit C to the Wu Declaration, and a duly authenticated copy of the Loan, in Mandarin and English, is attached to the Wu Declaration as Exhibit A, which sets forth the agreement to arbitrate between Zhongtie and the Respondents pursuant to Article 11 of the Personal Guarantees.

50. The Award arose out of a legal relationship that is commercial within the meaning of 9 U.S.C. § 202.

51. Article 50 of the Rules provides that the Award is "legally binding from the date on which it [was] made," and the Respondents were required to "perform the award in accordance with the time limit for performance specified in the award"—in this case, "within 10 days from the date of service of [the Award]." (See Exhibit C to Wu Declaration, pg. 44.)

52. Neither the Respondents nor the two corporate parties to the Arbitration have paid Zhongtie the amounts due and owing under the Award. Article 50 of the Rules authorizes judicial relief under just such circumstances: "[w]here any party fails to perform the award, the other party may apply to the competent court for enforcement."

53. 9 U.S.C. § 207 provides that, in an action to confirm an award that is governed by the New York Convention, a court shall confirm the award "unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award

1 specified in the said Convention." (9 U.S.C. § 207.) The Ninth Circuit has reiterated that the role of the district courts is strictly limited. "It is well-settled that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration . . . any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . . " (*Balen*, supra, 583 F.3d. at p. 652 [internal citations omitted].)

54. This Petition is timely because it is filed within three years after the Award was issued. (9 U.S.C. § 207.)

55. This Court has authority to confirm the Award under 9 U.S.C. § 207, as it is a final award falling under the New York Convention, insofar as it is "made in the territory of a State other than the State where the recognition and enforcement of such awards are sought, and arising out of differences between persons, whether physical or legal." (New York Convention Art. I, Sec. 1.)

56. No grounds for refusal or deferral of recognition or enforcement of the Award exist. (9 U.S.C. § 207.)

54. Under 9 U.S.C. § 207 and Article III of the New York Convention, this Petition is duly authorized, and Zhongtie is entitled to an order confirming the Award. Zhongtie respectfully requests that the Court confirm the Award by entering judgment in its favor and against the Respondents Yan and Liang in the amount of the Award, plus any accrued post-award interest, in addition to the costs of this instant confirmation proceeding.

**PRAYER FOR RELIEF**

**WHEREFORE**, Petitioner moves for an Order:

    A.    Confirming the Award made by the Commission assigned case no. (2020) J.Z.C.Z. No. 0455, against the Respondents, as authorized by 9 U.S.C. § 207;

    B.    Awarding Petitioner damages in the amount of RMB 30,396,431.45;

C. Awarding Petitioner costs accrued in bringing this action for confirmation;

D. Maintaining this Court's jurisdiction over this matter until the Respondent has fully complied with the Award; and

E. Awarding Petitioner such other and further relief as may be just, proper, and necessary in conformity with the Award.

Dated: October 12, 2022

Respectfully submitted,

DOYLE LAW APC

By: /s/ Stephen Beke
Stephen Beke, Esq. (SBN: 290972)

DGW Kramer LLP
RongPing Wu (*pro hac vice*)

Attorneys for Petitioner
ZHONGTIE DACHENG (ZHUHAI) INVESTMENT MANAGEMENT CO., LTD.