1  Conal Doyle, Esq., SBN 227554

2  Stephen Beke, Esq. (SBN: 290972)
   DOYLE LAW, APC
3  280 S Beverly Drive, Penthouse
   Beverly Hills, CA 90212
4  T: (310) 385-0567

5

6  Rongping Wu, Esq. (*Pro Hac Vice*)
   DGW KRAMER LLP
7  One Rockefeller Plaza
   10th Floor, Ste. 1060
8  New York, NY 10020
   T: (917) 633-6860
9  F: (917) 630-6183

10

11  Attorneys for Petitioner
12  ZHONGTIE DACHENG (ZHUHAI)
    INVESTMENT MANAGEMENT CO., LTD.
13

14

15              UNITED STATES DISTRICT COURT

16             CENTRAL DISTRICT OF CALIFORNIA

17

18  ZHONGTIE DACHENG (ZHUHAI)          Case No.: 8:22-cv-00461-SSS-ADS
    INVESTMENT MANAGEMENT
19  CO., LTD., a China Company

20       Petitioner,                   AMENDED MEMORANDUM OF
21                                      POINTS AND AUTHORITIES IN
         vs.                           SUPPORT OF PETITION TO
22                                      CONFIRM ARBITRATION AWARD

23  YAN, JINGGANG, an individual, and
24  LIANG, XIUHONG, an individual,

25       Respondents.

26

27

28

                          - 1 -

## MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to 9 U.S.C. § 207, the Petitioner, Zhongtie Dacheng (Zhuhai) Investment Management Co., Ltd., ("Zhongtie" or "Petitioner"), hereby submits this Amended Memorandum of Points and Authorities in support of its Petition to Confirm Arbitration Award and for Entry of Judgment and respectfully requests that the Court: requesting that this Court (a) confirm and enforce the March 24, 2020, arbitration award (the "Award") issued by an arbitral tribunal (the "Tribunal") comprised of three arbitrators and constituted under the 2015 Arbitration Rules of the Beijing Arbitration Commission, in the arbitration between Petitioner, Respondents Yan Jinggang ("Yan"), Liang Xiuhong ("Liang," together with Yan, the "Respondents"), and two entities under Respondent's control (the "Corporate Parties"); (b) issue a judgment in Petitioner's favor against the Respondents as provided for in the Award; (c) award the Petitioner the costs of this confirmation proceeding; and (d) retain jurisdiction over this matter until such time as the respondent has fully complied with the Award. In support of this amended Petition, Zhongtie respectfully states as follows:

## I.    FACTUAL BACKGROUND

### A.    The Underlying Loan and Dispute

The dispute underlying the Arbitration, and the Award itself, is rooted in a lending agreement entered into by the Petitioner and one of the Corporate Parties, Shanghai Fukong Interactive Entertainment Co., Ltd. (the "Borrower"), on November 16, 2017 (the "Loan"). The Loan provided that the Borrower would borrow RMB 30,000,000 from Petitioner, at an annual interest rate of 20%, with the loan term set to expire 9 months after the date Petitioner issued the loan principal to the Borrower. (*See* Wu Declaration, ¶¶ 4 – 6, and **Exhibit A** thereto).

On the same day, Respondents executed separate Performance Joint Liability Guarantee Letters ("Personal Guarantees") with the Petitioner. The Personal Guarantees provided that the Respondents and the other Corporate Party, Shanghai Zhongji Enterprise Group Co., Ltd. (together, the "Guarantors"), assumed joint and

several liability for the Borrower, which included loan principal, interest, damages, expenses, and other costs payable by the Borrower under the Loan.   (*See* Wu Declaration, ¶¶ 7 – 9, and **Exhibit B** thereto).  At the time of execution of the Loan and Personal Guarantees and continuing throughout the Arbitration, Respondent Yan was the actual controller of the Borrower, and held 95% of the equity of the corporate Guarantor, Shanghai Zhongji Enterprise Group Co., Ltd.  (*See* Wu Declaration, ¶ 10).

**B.    The Arbitration Request**

The Loan provided that any dispute between the parties was to be resolved via arbitration:

(i)    The Loan shall be governed by the laws of the PRC;

(ii)    Any dispute arising from performance of the Loan are to be dealt with through good-faith negotiation between the parties, and if such negotiation fails, either party would be entitled to initiate arbitration before the Commission.

(Exhibit A, Art. 10.6, to Wu Decl.)

The Personal Guarantees provided that any dispute between the parties was to be resolved in an identical fashion (together with the Loan dispute resolution clause, the "Arbitration Agreement"):

(i)    The Guarantee shall be governed by the laws of the PRC;

(ii)    Any disputes arising from the performance of the Guarantee shall be settled in the same way as agreed under the Loan.

(*Id.* ¶ 9, and Exhibit B, Art. 11.)

On May 28, 2018, in the wake of Borrower's ongoing failure to remit the periodic interest payments required by the Loan Contract, Petitioner sought to initiate arbitration proceedings against the Borrower and the Guarantors in accordance with the Loan Contract before the Beijing Arbitration Commission (the "Commission"). The proceedings were assigned case no.: (2018) J.Z.A.Z. No. 1421 (the "Arbitration Request").  (*Id.*, at ¶ 13.)  On July 17, 2018, Petitioner transferred its interest in the

RMB 15,000,000 Yuan of the loan principal owed by the Borrower and guaranteed by the Respondents to a third-party (the "Recoupment Agreement"). The third-party would pay Petitioner in two tranches of RMB 7,500,000 Yuan each. As part of the Recoupment Agreement, Petitioner agreed to request the withdrawal of the Arbitration Request within 5 business days of receiving the first transfer from the third-party. The tranches were received on September 29, 2018, and November 28, 2018, respectively, and the Arbitration Request was withdrawn. (*Id*. ¶¶ 14 & 15.) Following the request for withdrawal made by the Petitioner in accordance with the Recoupment Agreement, the Commission revoked the matter on November 20, 2018. (*Id*. ¶ 15.)

### C. The Arbitration

The same day, November 20, 2018, Petitioner initiated another arbitration proceeding against the Borrower, the Respondents, and the other Guarantor, to recover the remaining RMB 15,000,000 in principal. The Commission accepted the matter and assigned it case no.: (2018) J.Z.A.Z. No. 4111 (the "Arbitration"). (*Id*. ¶ 16.) The Loan Contract and Personal Guarantees both contained identical Arbitration Agreements to arbitrate any disputes arising from the Loan Contract before the Beijing Arbitration Commission. (See Exhibits A & B to Wu Decl.).

The Arbitration was governed by the ordinary procedures contained within the "Arbitration Rules of the Beijing Arbitration Commission" (the "Rules"), as implemented by the Commission since April 1, 2015. (*Id*. ¶ 17.) On January 25, 2019, the Borrower filed an objection with the Commission regarding jurisdiction. On June 11, 2019, the Commission issued a decision authorizing the Tribunal to make a decision regarding the jurisdictional issue presented by the Borrower. Because the parties did not select a panel in accordance with the schedule required by the Rules, the Commission chose a three-person Tribunal, and assigned them to this matter on the same day, June 11, 2019. The Commission served notice of the formation of the Tribunal and the notice of the hearing date set for July 11, 2019, on Petitioner, Borrower, Respondents, and the corporate Guarantor. No objections were raised prior

to the hearing date by any parties.  (*Id.* ¶ 18.)

Despite being duly notified of the hearing by the Commission, Respondents did not appear on July 11, 2019.  (*Id.* ¶ 19.)  At the hearing, the Borrower sought the recusal of one of the chosen arbitrators, and consequently the Tribunal was suspended.  After briefing the issue, on November 5, 2019, the Commission rejected the Borrower's arguments for recusal and retained the chosen arbitrator, setting the matter for another hearing on December 17, 2019.  (*Id.* ¶ 20.)  On December 17, 2019, the Tribunal held a hearing at which the Petitioner and the Borrower appeared but, despite being duly notified, the Respondents failed to appear yet again.  (*Id.* ¶ 21.)

The Tribunal tried the matter in accordance with the Rules, and heard the parties' arguments, facts, and evidence.  Additionally, the Tribunal provided the parties with an opportunity to cross-examine and challenge the presented evidence.  Moreover, the Tribunal conducted an investigation, and independently verified the facts alleged by the parties.  Finally, the Tribunal extended the time within which to conduct the proceedings, in order to afford more opportunity to the parties that did not appear to make an appearance and participate.  (*Id.* at ¶ 22.)

**D.    The Award**

After almost four months of deliberations, on March 24, 2020, the Tribunal delivered a final award in favor of the Petitioner.  The Award was issued in Mandarin, the language of the Arbitration, and assigned number (2020) J.Z.C.Z. No. 0455. Attached to the Wu Declaration as **Exhibit C** is a notarized copy of the Award, along with a certified and notarized English translation.  The Award provides in part:

- Pursuant to the Loan and evidence presented by the parties, the Borrower is liable to Zhongtie for the RMB 15,000,000 in unpaid loan principal;

- Pursuant to the Loan and evidence presented by the parties, as of November 20, 2018, the Borrower is liable to Zhongtie for the RMB 5,316,700 in unpaid loan interest;

- Pursuant to the Loan, the Borrower is liable to Zhongtie for loan interest on the

unpaid principal, calculated from November 21, 2018, at 20% per annum, until the date the unpaid principal has been repaid;

- Borrower is liable for attorneys' fees of RMB 10,000, and the arbitration fee of RMB 149,183.50; and

- Respondents and the corporate Guarantor, by virtue of the Personal Guarantees executed between them and the Petitioner, are jointly and severally liable to Petitioner for the above enumerated amounts owed by the Borrower.

(See Wu Declaration ¶ 23, and Exhibit C.)

The period for appealing the Award expired on September 24, 2020, in accordance with applicable PRC law.  (*Id*. ¶ 24.)  In accordance with the Rules, the Award became final and enforceable on the date it was issued by the Tribunal—March 24, 2020.  None of the parties to the Award have appealed and the amounts are now long overdue and payable to the Petitioner.  (*Id*.)

The current amount outstanding and payable by the Respondents under the Award is RMB 20,475,883.50, plus any accrued per diem interest of RMB 8,219.18 beginning on November 21, 2018, for a total accrued interest in the amount of RMB 9,920,547.95 as of March 11, 2022.  In total, as of March 11, 2022, Respondents owe Petitioner RMB 30,396,431.45 under the Award.  (*Id*. ¶ 26.)  To date, the Respondents, the Borrower, and the corporate Guarantor have failed to pay any amount pursuant to the Award.  (*Id*. ¶ 25.)

## II.   ARGUMENT

The Award is a well-reasoned award, issued by respected jurists in a proceeding in which all parties bound by the Award had a full and ample opportunity to participate.

The Federal Arbitration Act ("FAA") provides that "[w]ithin three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration."  9 U.S.C. § 207.  Given that the Award was rendered on March 24, 2020, this Petition to recognize and enforce the

Award is timely under the FAA.

Confirmation of the Award is governed by the New York Convention (the "Convention"), as implemented by Chapter 2 of the FAA, 9 U.S.C. § 201, *et seq*. The Award is an "arbitral award arising out of a legal relationship . . . which is considered as commercial," and therefore it lands directly within the purview of the Convention. (See 9 U.S.C. § 202.)

According to the Convention and the FAA, a district court's role in reviewing an arbitral award is strictly limited: "[t]he court <u>shall</u> confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." (9 U.S.C. § 207 [emphasis added].) The Ninth Circuit has reiterated that the role of the district courts is strictly limited. "It is well-settled that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration . . . any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." (*Balen v. Holland Am. Line, Inc.*, 583 F.3d 647, 652 (9th Cir. 2009) [internal citations omitted].)

Absent the existence of one of the specified grounds for refusal or deferral as enumerated in the Convention, an arbitral award <u>must</u> be recognized and enforced. The grounds for refusal or deferral are contained within Article V of the Convention:

1.   The parties to the [arbitration] agreement referred to in article II were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made (Article V(1)(a));

2.   The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case (Article V(1)(b));

3.   The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted

to arbitration cannot be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced (Article V(1)(c));

4.  The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or failing such agreement, was not in accordance with the law of the country where the arbitration took place (Article V(1)(d));

5.  The award has not yet become binding between the parties, or has not been set aside or suspended by a competent authority of the country in which, or under the law of which, the award was made (Article V(1)(e));

6.  The subject of the dispute cannot be settled by arbitration under the law of the State in which recognition and enforcement is requested (Article V(2)(a)); or

7.  The recognition or enforcement of the award would be contrary to the public policy of the State in which recognition and enforcement is requested (Article V(2)(b)).

Here, none of the grounds above for refusal to recognize or enforce an arbitral award are present. The plain language of the respective articles of the Loan and the Personal Guarantees makes clear that Zhongtie and the Respondents agreed that certain disputes could be resolved by arbitration. (See Exhibit A to Wu Declaration, Art. 10.6, and Exhibit B to Wu Declaration, Art. 11.) Moreover, the Respondents have failed to file a motion to vacate the first award within the time frame specified by the FAA. (See 9 U.S.C. § 12.)

Nothing in the laws of the United States prohibits adjudicating the dispute between the parties, which arises out of a failure to perform under a commercial loan contract or liability under a personal guaranty. Rather, United States jurisprudence has long favored arbitration for the resolution of international commercial disputes. (See *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985) [endorsing "emphatic federal policy in favor of arbitral dispute resolution," which

1    "applies with special force in the field of international commerce"].)

2      The Tribunal was composed by and followed the Rules of the Commission, as

3    was contemplated by the parties' agreements to arbitrate.  The Award is binding and

4    has not been set aside in the PRC, or upon information and belief, in any other

5    jurisdiction.  Finally, confirming the Award offends no public policy of the United

6    States.

7      The party opposing confirmation of an arbitral award under the New York

8    Convention bears the burden of proving that such a ground for refusal exists and applies

9    to the situation at hand.  (See *Polimaster Ltd. v. RAE Syst., Inc.*, 623 F.3d 832, 836 (9th

10   Cir. 2010) ["the [respondent] has the burden of showing the existence of a New York

11   Convention defense.  The burden is substantial because the public policy in favor of

12   international arbitration is strong, and the New York Convention defenses are

13   interpreted narrowly."]  (internal citations omitted).)  The Respondents cannot meet

14   this burden.

15     Based on the foregoing, the Award should be confirmed in all respects, so that

16   the Petitioner may seek enforcement of the Award, and immediately receive the

17   monetary sums it is entitled to receive.

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

### III.   CONCLUSION

Petitioner Zhongtie Dacheng (Zhuhai) Investment Management Co., Ltd., respectfully requests that the Court enter an Order pursuant to 9 U.S.C. § 207: (1) confirming and enforcing the Award; (2) entering judgment in favor of the Petitioner and against the Respondents, as provided for in the Award; (3) awarding Petitioner the costs of this proceeding; and (4) retaining jurisdiction over this matter until the Respondents have fully complied with the Award.

Dated: October 12, 2022

Respectfully submitted,

DGW KRAMER LLP

By:    /s/ Rongping Wu
       Rongping Wu