Conal Doyle, Esq. SBN 227554

Stephen Beke, Esq. SBN: 290972
DOYLE LAW, APC
280 S Beverly Drive, Penthouse
Beverly Hills, CA 90212
T: (310) 385-0567

Rongping Wu, Esq. (*Pro Hac Vice*)
DGW KRAMER LLP
One Rockefeller Plaza
10th Floor, Ste. 1060
New York, NY 10020
T: (917) 633-6860
F: (917) 633-6183

Attorneys for Petitioner
ZHONGTIE DACHENG (ZHUHAI)
INVESTMENT MANAGEMENT CO., LTD.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZHONGTIE DACHENG (ZHUHAI) INVESTMENT MANAGEMENT CO., LTD., a China Company<br><br>Petitioner,<br><br>vs.<br><br>YAN, JINGGANG, an individual, and LIANG, XIUHONG, an individual,<br><br>Respondents. | Case No.: 8:22-cv-00461-SSS-ADS<br><br>**AMENDED DECLARATION OF RONGPING WU IN SUPPORT OF PETITION TO CONFIRM ARBITRATION AWARD** |

I, RONGPING WU, an attorney admitted to practice before the courts of the State of New York, and admitted to this Court *pro hac vice*, affirm the following under the penalty of perjury:

1.      All statements set forth in this Declaration are based upon my personal knowledge or my review of original versions or certified copies of the relevant documents.  I make this Declaration in support of the Petition to Confirm Arbitration Award and for Entry of Judgment filed by the Petitioner, Zhongtie Dacheng (Zhuhai) Investment Management Co., Ltd. ("Zhongtie" or "Petitioner").

2.      I am a partner with the law firm of DGW Kramer LLP. DGW Kramer LLP acts as counsel to Petitioner for purposes of enforcing the arbitration award (the "Award") that is the subject of the Petition in the United States of America.

3.      The Petitioner is a corporation organized under the laws of People's Republic of China, with its principal place of business located at: (Centralized Office Area) Room 105-27185 No. 6 Baohua Road, Hengqin New Area, Zhuhai, Guangdong Province, People's Republic of China ("PRC").   Zhongtie is in the business of investment management in the PRC and globally.

4.      On November 16, 2017, Petitioner entered into a loan agreement (the "Loan") with Shanghai Fukong Interactive Entertainment Co., Ltd. (the "Borrower"). A duly certified true and accurate copy of the Loan, together with a certified English translation thereof, is attached hereto as **Exhibit A**.

5.      The Loan provided, in part, that the Borrower would borrow RMB 30,000,000 from Petitioner, at an annual interest rate of 20%, with the loan term set to expire 9 months after the date Petitioner issued the loan principal to the Borrower. Repayment terms required that the Borrower pay monthly interest throughout the term of the Loan, and that the principal would be due after the expiration of the term.

6.      The Loan provided that any dispute between the parties was to be resolved via arbitration:

        i.  The Loan shall be governed by the laws of the PRC;

   ii. Any dispute arising from performance of the Loan are to be dealt with through good-faith negotiation between the parties, and if such negotiation fails, either party would be entitled to initiate arbitration before the Commission.

(Exhibit A, Art. 10.6.)

  7. In order to further secure its rights as the lender under the Loan, on November 16, 2017, Petitioner executed three separate Performance Joint Liability Guarantee Letters ("Personal Guarantees") with the Respondents, Yan Jinggang ("Yan") and Liang Xiuhong ("Liang" together with Yan, the "Respondents") and a corporate party called Shanghai Zhongji Enterprise Group Co., Ltd., (together with the Respondents, the "Guarantors").   A duly certified true and accurate copy of the Personal Guarantees executed by the Respondents, together with a certified English translation thereof, is attached hereto as **Exhibit B**.

  8. The Personal Guarantees provided that the Guarantors assumed joint and several liability for the Borrower, which liability included loan principal, interest, damages, expenses, and other costs payable by the Borrower under the Loan.   The period of the Personal Guarantees was 2 years from the expiration of the Loan term. (See Exhibit B.)

  9. The Personal Guarantees also contain the Agreement to Arbitrate between Petitioner and Respondents, which provides:

   i. The Guarantees shall be governed by the laws of the PRC;

   ii. Any disputes arising from the performance of the Guarantees shall be settled in the same way as agreed under the Loan.

(*Id*., Art. 11.)

  10. Crucially, Respondents affixed their personal seals and signatures to the Personal Guarantees.   (*Id*.)   At the time of execution of the Loan and Personal Guarantees and continuing through the arbitration proceedings, Respondent Yan was

the actual controller of the Borrower, and held 95% of the equity of the corporate Guarantor, Shanghai Zhongji Enterprise Group Co., Ltd.

11.     On December 22, 2017, Petitioner transferred the Loan principal, a total of RMB 30,000,000, to the Borrower, thus fixing the expiration of the Loan term as September 22, 2018.  Prior to this transfer, the Borrower, in accordance with the terms of the Loan, executed an "Entrusted Collection Letter" with a third-party entity, which instructed Petitioner to transfer the loan principal to an account held by that third-party entity.

12.     Following the transfer of loan principal, a dispute arose between the parties concerning the parties' rights and obligations under the Loan Contract, specifically surrounding the continuing failure of the Borrower to make the required interest payments.  Ultimately, the Borrower failed to make any repayments of loan principal when it became due at the expiration of the Loan term on September 22, 2018.

13.     On May 28, 2018, in the wake of Borrower's ongoing failure to remit the periodic interest payments required by the Loan, Petitioner sought to initiate arbitration proceedings against the Borrower and the Guarantors in accordance with the Loan Contract before the Commission.  It was assigned case no. (2018) J.Z.A.Z. No. 1421 (the "Arbitration Request").

14.     On July 17, 2018, Petitioner transferred its interest in RMB 15,000,000 of the loan principal owed by the Borrower and guaranteed by the Respondents to a third-party (the "Recoupment Agreement").  The third party would pay Petitioner in two tranches of RMB 7,500,000 each.  As part of the Recoupment Agreement, Petitioner agreed to request the withdrawal of the Arbitration Request within 5 business days of receiving the first transfer from the third party.  The third party would then transfer the last tranche within 5 business days of receiving notice of the submission of the request to withdraw.

///

///

15.     Following the request for withdrawal made by the Petitioner in accordance with the Recoupment Agreement, the Commission revoked the matter on November 20, 2018.  The tranches were received on September 29, 2018, and November 28, 2018.

16.     On November 20, 2018, Petitioner initiated another arbitration proceeding against the Borrower, the Respondents, and the corporate Guarantor, to recover the remaining RMB 15,000,000 in principal.  The Commission accepted the matter and assigned it case no. (2018) J.Z.A.Z. No. 4111 (the "Arbitration").

17.     The Arbitration was governed by the ordinary procedures contained within the Arbitration Rules of the Beijing Arbitration Commission (the "Rules"), as implemented by the Commission since April 1, 2015.

18.     On January 25, 2019, the Borrower filed an objection with the Commission regarding jurisdiction.  On June 11, 2019, the Commission issued a decision authorizing the Tribunal to make a decision regarding the jurisdictional issue presented by the Borrower.  Because the parties did not select a panel in accordance with the schedule required by the Rules, the Commission chose a three-person Tribunal, and assigned them to this matter on the same day, June 11, 2019.  The Commission served notice of the formation of the Tribunal and the notice of the hearing date for July 11, 2019, to Petitioner, Borrower, Respondents, and the corporate Guarantor.  No objections were raised prior to the hearing date by any parties.

19.     Despite being duly notified of the hearing by the Commission, the Respondents did not appear on July 11, 2019.

20.     At the hearing, the Borrower sought the recusal of one of the chosen arbitrators, and consequently the Tribunal was suspended.  After briefing the issue, on November 5, 2019, the Commission rejected the Borrower's arguments for recusal and retained the chosen arbitrator, setting the matter for another hearing on December 17, 2019.  The Commission was responsible for service of the notice of hearing.

///

///

21.     On December 17, 2019, the Tribunal held a hearing at which the Petitioner and the Borrower appeared.  Despite being duly notified, however, the Respondents failed to appear yet again.

22.     The Tribunal tried the matter in accordance with the Rules, and heard the present parties' respective arguments, facts, and evidence.  Additionally, the Tribunal provided the parties with an opportunity to cross-examine and challenge the presented evidence.   Moreover, the Tribunal conducted an investigation and independent verification of the facts alleged by the parties.  Finally, the Tribunal extended the time within which to conduct the proceedings in order to afford more opportunity to the parties that did not appear to make an appearance and participate.

23.     After almost four months of deliberation, on March 24, 2020, the Tribunal delivered a final award in favor of the Petitioner.  The Award was issued in Mandarin, the language of the Arbitration, and assigned number (2020) J.Z.C.Z. No. 0455.  A duly certified true and accurate copy of the Award issued by the Commission and dated March 24, 2020, together with a certified English translation thereof, is attached hereto as **Exhibit C**.  The Award provides in part:

> i.   Pursuant to the Loan and respective evidences presented by the parties, the Borrower is liable to Zhongtie for the RMB 15,000,000 in unpaid loan principal;
>
> ii.  Pursuant to the Loan and respective evidences presented by the parties, as of November 20, 2018, the Borrower was liable to

1       Zhongtie for the RMB 5,316,700 in unpaid loan interest;

2       iii.    Pursuant to the Loan, the Borrower is liable to Zhongtie for loan

3               interest on the unpaid principal, calculated from November 21,

4               2018, at 20% per annum, until the date the unpaid principal has

5               been repaid;

6       iv.     Borrower is liable for attorneys' fees of RMB 10,000 and the

7               arbitration fee of RMB 149,183.50; and

8       v.      The Respondents, by virtue of the Personal Guarantees executed

9               between them and the Petitioner, were jointly and severally liable

10              to Petitioner for the above enumerated amounts owed by the

11              Borrower.

12      24.     To the best of my knowledge, no proceedings have been commenced in

13  the PRC for the purpose of correcting or interpreting the Award, or to otherwise contest

14  its validity.  Chinese law requires that any such application be brought within six (6)

15  months of service of an arbitration award upon the adverse parties.  (See Zhongcai Fa

16  (仲裁法) [Arbitration Law] Art. 59, a true and accurate copy of which is attached

17  hereto as **Exhibit D** (2017 LEXIS 1299).)  In accordance with the Rules, the Award

18  became final and enforceable on the date it was issued by the Tribunal—March 24,

19  2020.  The Respondents had until September 24, 2020, to contest the validity of the

20  Award.  The amounts are now long overdue, and payable to the Petitioner.

21      25.     To date, the Respondents, the Borrower, and the corporate Guarantor have

22  failed to pay any amount owed pursuant to the Award.

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

26.     The current amount outstanding and payable by the Respondents under the Award is RMB 20,475,883.50 plus any accrued per diem interest of RMB 8,219.18 beginning on November 21, 2018, for a total accrued interest in the amount of RMB 9,920,547.95 as of March 11, 2022.  In total, as of March 11, 2022, Respondents owe Petitioner RMB 30,396,431.45 under the Award.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 12th day of October, 2022 in New York, New York.

_/s/ Rongping Wu_____
Rongping Wu

# EXHIBIT A

借 款 合 同

合同编号：ZTDC-JKHT1711-06

借 款 人：（以下称"甲方"）上海富控互动娱乐股份有限公司
统一社会信用代码：913100006072187512
法定代表人：王晓强
送达地址：上海市虹口区广粤路 437 号 2 幢
联系电话：021-68823766

出借人：（以下称"乙方"） 中铁大成（珠海）投资管理有限公司
统一社会信用代码：91440400MA4W9CPP9A
法定代表人：岑菁
送达地址： 北京市朝阳区广渠路 21 号金海商富中心 A 座 1906
联系电话：010-59693120



（在甲方与乙方签订的《借款合同》（以下简称"本合同"）中，甲方与乙方统称为"双方"，各自简称为"一方"。）

根据中华人民共和国有关法律法规之规定，甲、乙双方按照平等、自愿、诚实信用原则，经协商一致，就甲方向乙方借款事宜订立本合同，共同严格遵守。

**第一条 甲方的保证与承诺**
1.1 甲方是具有完全民事行为能力的法人，能独立承担民事责任。
1.2 甲方在本合同项下的全部意思表示真实。
1.3 甲方在本合同项下的借款用途完全合法。
1.4 甲方向乙方提交的全部资料、证件均真实、合法、有效。

**第二条 借款金额、借款利率、借款用途、借款期限、还本付息方式**
2.1 借款金额：
不低于人民币叁仟万圆整（￥30,000,000.00）。
（实际借款金额以乙方通过银行划付借款的凭证所载金额为准，乙方通过银行划付借款的凭证为本合同的组成部分，与本合同具有同等法律效力）。
2.2 借款利率：年利率 20%。
2.3 借款用途：流动资金。
2.4 借款期限：本合同项下的借款期限自本合同第三条第 3.2 款约定的事项全部办理完毕且乙方通过银行划付借款之日（即借款发放之日）起届满 9 个月之当日止（注：每月按 30 个自然日计算，下同）。
本合同所载的借款期限起始日与乙方通过银行划付借款的凭证所载日期不一致的，借款期限起始日以乙方通过银行划付借款的凭证所载日期为准，借款到期日应根据借款期限起始日相应调整。

- 1 -

2.5 支付利息方式：

2.5.1 甲方按以下约定的日期及金额向乙方支付借款利息：

a. 自借款发放之日起届满 1 个月之当日，甲方向乙方支付第一个月借款利息，自借款发放之日起届满 2 个月之当日，甲方向乙方支付二个月借款利息，以后支付利息的日期及金额，依此类推。

b. 甲方按本合同第四条第 4.2 款约定在借款发放之日起届满 6 个月后提前偿还借款本金的，其利息计算至借款本金偿还当日。

2.5.2 乙方在收到甲方支付的相应利息后应向甲方提供收据，如甲方需出具合法有效的发票，则由甲方自行承担相关税费。

2.5.3 如借款期限延长，则付息方式由双方另行确定。

2.6 还本方式：

2.6.1 甲方在借款期限届满之当日还本。

2.6.2 如借款期限延长，则还本日依据双方就借款展期金额及期限达成一致的协议相应顺延。

**第三条 借款的发放**

3.1 借款的发放：

3.1.1 甲方需将指定的收款账户于乙方划付借款之前通过《委托收款函》书面送达乙方。乙方将借款付至甲方指定账户之当日即视为起息日，乙方在银行划付借款的凭证为本合同项下借款发放及本息偿还的有效证据。

3.1.2 乙方将借款付至《委托收款函》约定的甲方指定账户之日，则视为乙方已履行完毕本合同项下的义务。

3.2 在下列条件全部符合时，乙方才可发放借款：

（1）甲方未发生或不存在本合同所约定的任一条款违约事件或违约行为；

（2）本合同已经双方签署并生效。

**第四条 借款本息的偿还**

4.1 甲方须按本合同项下约定的付息日和还本日足额支付利息、偿还借款本金至乙方的指定银行账户，该银行账户由乙方另行向甲方提供或指定。。

4.2 甲方有权自借款发放之日起届满 6 个月后提前偿还借款本息。

**第五条 甲方的权利和义务**

5.1 甲方有权依本合同约定的期限、金额、用途提取和使用借款。

5.2 甲方须按本合同约定的用途使用借款，不得将借款挪作他用。

5.3 甲方按本合同的约定偿还借款本息。

5.4 甲方不得以与其他任何第三方纠纷为理由延迟或拒绝履行还款义务。

5.5 甲方无条件接受乙方对借款使用情况进行的检查和监督。

5.6 在甲方履行完毕本合同项下债务之前，未经乙方书面同意，不得出售和处分名下主要资产、不得提前清偿其它债务。

5.7 甲方未征得乙方的书面同意，不得将其在本合同项下的任何还款及其他义务转移给第三人。

5.8 甲方有下列任一事项时，应当至少 5 日书面通知乙方，并且在本合同项下债权得到全部清偿前，不应采取下列行动：

（1）甲方对名下主要资产出售、赠与、出租、出借、转移、抵押、质押或以其他方式进行处分；

（2）甲方为第三方提供担保或债务承担等具有担保效果的类似行为。

5.9 甲方应当在下列事项发生或可能发生之日起 3 日内书面通知乙方：

（1）甲方变更住所、通讯地址、联系方式等事项；

（2）甲方涉及重大诉讼或仲裁案件，或主要资产或本合同项下担保物被采取了财产保全等强制措施；

（3）甲方签署对其财务状况有重大影响的合同；

（4）甲方涉及违法活动。

## 第六条 乙方的权利和义务

6.1 乙方有权检查和监督本合同项下借款的使用情况。

6.2 乙方有权按本合同约定收回借款，并按本合同项下约定收取利息、罚息、违约金等及其它应由甲方支付的费用。

6.3 对甲方逃避监督、拖欠借款本金及利息的行为，乙方有权进行催收。

6.4 除非双方另行协商约定，甲方支付的款项应按下列顺序清偿乙方的债权：

（1）实现债权的费用（包括但不限于：催收费、诉讼费、评估费、保全费、公告费、律师费、执行费、差旅费等）；（2）罚息；（3）违约金；（4）利息；（5）本金。

6.5 乙方应按本合同约定及时发放借款，但因甲方原因造成迟延的除外。

6.6 本合同履行期间，乙方的通讯地址（如住所、联系电话等）发生变更的，需在变更发生之日起 3 日以书面形式通知甲方。

6.7 在本合同有效期内，乙方有权转让本合同项下部分或全部债权，无须征得甲方同意，但应书面通知甲方。乙方转让本合同项下的债权后，甲方应继续履行本合同约定的各项义务。

6.8 乙方有权行使法定及本合同项下约定的债权人享受的其他权利。

## 第七条 借款的提前到期

本合同有效期内，发生或发现下列情况之一的，乙方有权单方宣布本合同项下已发放的借款提前到期，并要求甲方立即偿还所有提前到期借款本金并结清利息。

7.1 甲方向乙方提供虚假的证照及资料的。

7.2 未经乙方书面同意，甲方擅自改变本合同项下任何一笔借款用途的。

7.3 未经乙方书面同意，甲方擅自向第三人提供担保的或债务承担等具有担保效果的类似行为。

7.4 甲方拒绝或阻碍乙方对借款使用情况实施监督检查的。

7.5 甲方不履行本合同约定的任何一项义务；或违反本合同约定的任何一项陈述或保证。

7.6 甲方卷入或可能卷入重大的诉讼或仲裁程序及其他法律纠纷，遭受重大经济损失、财务状况恶化，或者其他可能影响偿债能力的事件，或出现影响还款能力的其他情形。



- 3 -

### 第八条　违约责任

8.1 甲方未按合同约定日期偿还借款、支付利息及其他应付费用，除必须按数支付外，需向乙方支付欠付金额每日1‰的违约金。

8.2 甲方未按合同约定用途使用借款的，按照挪用的金额和实际天数计算须向乙方支付每日1‰的违约金。

8.3 本合同签订后，未经乙方书面同意，甲方单方解除本合同，须按照本合同项下借款金额的30%向乙方支付违约金。

8.4 因甲方违约致使乙方采取诉讼方式实现债权的，甲方应承担乙方为实现债权而支付的全部相关费用，该费用包括但不限于催收费、诉讼费、评估费、保全费、公告费、律师费、执行费、差旅费等。

### 第九条　通知送达

9.1 本合同项下约定的或履行本合同而进行的任何通知以下列约定为送达日：

9.1.1 如为信件，以邮戳所示日期为送达日。

9.1.2 如为传真，发传真日为送达日。

9.1.3 如为专人递送，收件人签收日为送达日。

9.1.4 如为快递公司递送，以寄件人交寄后满3日为送达日。

9.2 双方在本合同中填写的联系地址即为其有效的通讯地址。

### 第十条　合同的生效、变更、修改、效力及争议解决

10.1 本合同自甲乙双方法定代表人（或授权代表）签字盖章之日起生效。

10.2 本合同生效后，任何一方不得擅自变更或修改。如需变更或修改本合同，应经双方协商一致，并达成书面补充协议。

10.3 本合同项下的附件，以及与履行本合同有关的协议等，均为本合同不可分割的组成部分，与本合同具有同等的法律效力，但本合同另有约定的除外。

10.4 本合同未尽事宜，甲乙双方可另行签订补充协议，与本合同不相一致的，以补充协议为准。

10.5 本合同一式贰份，甲乙双方各持壹份，均具有同等法律效力。

10.6 本合同的订立、效力、解释、履行、修改和终止以及争议的解决均适用中国法律。在履行合同过程中发生的一切争议，各方应友好协商解决；协商不成的，各方均有权向北京仲裁委员会提起仲裁。

### 第十一条　保密

11.1 本合同的全部条款及本合同本身均为保密信息，各方不应向任何第三方披露，但与该项目有关的高级职员、董事、雇员、代理人和专业顾问以及甲方、乙方股东除外；如果各方根据法律的要求而需要向政府、公众或者股东披露有关本文件的信息或者将本文件交至有关机构备案则属例外。

11.2 不论本合同是否变更、解除或终止，本条款均有法律效力。

### 第十二条　特别约定

自本合同第三条第3.2款约定的事项全部完成之日（按时间先后顺序，以最晚完成事项之日为准）起，乙方应当在30个工作日（以下称"出借期限"）内完

成本合同项下的借款出借义务。如乙方未能在出借期限内完成本合同项下的借款出借义务，则本合同终止且双方互不承担任何责任。但甲方同意顺延出借期限的情况除外。

**第十三条  其他约定**

13.1  在本合同有效期内，甲方名称、通信地址、联系方式等发生变化而未通知乙方的，乙方依据本合同所载资料向甲方发送的所有文书视同送达。

13.2  甲方有逃避乙方监督、拖欠贷款本金及利息、恶意逃废债务等行为时，乙方有权将该种行为向有关单位通报、报案，并可在新闻媒体上公告。

**第十四条  重要说明**

对于本合同项下全部条款，出借人已经向借款人进行了充分的解释和说明，借款人表示已全面、准确的理解，并知悉任何欺诈、违约行为均要承担相应的法律责任。总之，签约双方一致表示对本合同项下全部条款含义认识一致。

（以下无正文）







[本页无正文，为《借款合同》（合同编号：ZTDC-JKHT1711-06）的签署页]

本合同由以下各方签署：

甲方：（盖章）

法定代表人（或授权代表）（签字）

2017 年 11 月 16 日

乙方：（盖章）

法定代表人（或授权代表）（签字）

2017 年 11 月 16 日

- 6 -

# Loan Contract

**Contract Number: ZTDC-JKHT1711-06**

**The Borrower:**
**Shanghai Fukong Interactive Entertainment Co., Ltd. ("Party A" hereinafter)**
Unified Social Credit Code: 913100006072187512
Legal Representative: Wang Xiaoqiang
Address for Service: Building 2, No.437 Guangyue Road, Hongkou District, Shanghai City
Tel.: 021-68823766

**The Lender:**
**Zhongtie Dacheng (Zhuhai) Investment Management Co., Ltd. ("Party B" hereinafter)**
Unified Social Credit Code: 91440400MA4W9CPP9A
Legal Representative: Cen Jing
Address for Service: #1906, Tower A, Jinhai Wealth Commercial Center, No.21 Guangqu Road, Chaoyang District, Beijing City
Tel.: 010-59693120

(In the *Loan Contract* ("This Contract" hereinafter) signed by the above two Parties, the two Parties are collectively referred to as "Parties" and separately as "Party".)

In accordance with relevant laws and regulations of the People's Republic of China, in principles of equality, free will, honesty and credibility, through good faith negotiation, both Parties conclude this Contract in reference to Party A's borrowing from Party B, which shall be jointly complied with.

**Article I Party A's Warranties and Commitments**
1.1 Party A is a legal entity with full capacity for civil conduct, and is able to independently bear civil liability.
1.2 All the declaration of Party A's intention under this Contract is genuine.
1.3 Party A's usage of the loan described hereunder is completely legitimate.
1.4 All documents and certificates submitted by Party A to Party B are genuine, legal and effective.

**Article II Loan amount, Interest Rate, Usage, Period, and Interest Payment/Principal Repayment Modes**
2.1 Loan Amount:
No less than ￥30,000,000.00 (Thirty Million CNY).
(The actual loan amount shall be subject to the one specified on the payment voucher of Party B, which constitutes the indispensable part of this Contract with the same legal effect).
2.2 Interest Rate: 20% annually.
2.3 Usage: Circulating fund.
2.4 Period: 9 months since the date all issues described in Paragraph 3.2 of Article III hereunder are completed and Party B lends the loan through the bank (namely the date of lending) (note: each month shall be composed of 30 calendar days; the same hereinafter).
In the event that the starting day of the loan period stipulated under this Contract differs from the one specified on the voucher, the latter shall prevail, based on which the maturity date of loan shall be adjusted accordingly.

Shanghai Fukong Interactive Entertainment Co., Ltd. (seal on the perforation)
Zhongtie Dacheng (Zhuhai) Asset Management Co., Ltd. (seal on the perforation)

2.5 Interest payment mode:

2.5.1 Party A shall pay to Party B the loan interest in accordance with the following arrangements:

a. Party A shall pay to Party B the interest of the 1st-month loan 1 month after the date of lending, and pay that of the 2nd-month loan 2 months after the date of lending. Such mode applies to all the following loan interest payment.

b. In the event that Party A repays the principal beforehand 6 months after the date of lending as stipulated by Paragraph 4.2 of Article IV hereunder, the date of such repayment shall be the final day for interest calculation.

2.5.2 Party B shall, after receipt of the interest paid by Party A, issue the corresponding voucher to Party A; if Party A requests the valid invoice, the tax incurred thereby shall be solely assumed by Party A.

2.5.3 In the event of loan period extension, the interest payment mode shall be otherwise determined by both Parties.

2.6 Principal repayment mode:

2.6.1 Party A shall repay the principal upon expiry of the loan period.

2.6.2 In the event of loan period extension, the date of principal repayment shall be correspondingly extended based on the agreement on changes of loan amount and period.

**Article III Loan Issuance**

3.1 Loan issuance:

3.1.1 Party A shall, prior to Party B's loan issuance, inform Party B of details of the designated collection account by delivering the *Letter of Entrusted Collection* in written form. The date Party B remits to Party A's designated account shall be the value date, and Party B's payment voucher for the loan shall serve as the effective evidence of loan issuance, principal repayment and interest payment hereunder.

3.1.2 Party B would be regarded as having performed its duties hereunder the moment it remits to Party A's designated account as specified in the *Letter of Entrusted Collection*.

3.2 Party B may issue the loan only after all conditions below are met:

(1) No contract-breaching event or conduct occurs to Party A;

(2) This Contract is signed by both Parties and comes into effect.

**Article IV Principal Repayment and Interest Payment**

4.1 Party A shall fully repay the loan principal and pay the loan interest to the bank account designated by Party B on the date of repayment/payment agreed hereunder, and Party B shall separately inform Party A of details of such account.

4.2 Party A shall be entitled to repay the principal and pay the interest beforehand 6 months after the date of lending.

**Article V Party A's Rights and Duties**

5.1 Party A shall be entitled to withdraw and use the loan as per period, amount and usage agreed hereunder.

5.2 Party A must be subject to the usage requirement hereunder, and appropriation for any other purpose is prohibited.

5.3 Party A must repay the loan principal and pay the loan interest as agreed hereunder.

5.4 Party A may not postpone or refuse to perform the repayment duties for reasons of any dispute against any third Party.

5.5 Party A shall unconditionally accept Party B's check and supervision on the loan usage status.

5.6 Prior to Party A's performance of all duties hereunder, Party A may not sell or dispose any prime assets under its name or settle any debts thereof in advance without Party B's written consent.

5.7 Party A may not transfer any of its duties for repayment or other issues hereunder to a third person without Party B's written consent.

5.8 Party A shall send written notice to Party B at least 5 days before in respect of the following issues, which may not be carried out before all the debts hereunder are paid off:

Shanghai Fukong Interactive Entertainment Co., Ltd. (seal on the perforation)

Zhongtie Dacheng (Zhuhai) Asset Management Co., Ltd. (seal on the perforation)

(1) Party A sells, gifts, rents, lends, transfers, mortgages, pledges or dispose otherwise the prime assets under its name;

(2) Party A takes any guarantee-natured action such as providing for any third Party any guarantee or undertaking any debt liability.

5.9 Party A shall, in 3 days after (detection of) occurrence of any event below, notify Party B in writing:

(1) Party A changes domicile, mailing address, contact information, etc.;

(2) Party A is involved in any grave litigation or arbitration, or any enforcement action (such as property preservation) is taken against Party A's prime assets or the guaranty hereunder;

(3) Party A signs any contract that has significant influence on its financial position;

(4) Party A is involved in any illegal activity.

**Article VI Party B's Rights and Duties**

6.1 Party B shall be entitled to check and supervise on the loan usage status.

6.2 Party B shall be entitled to recover the loan and collect the interest, interest penalty, liquidated damages or any other expenses payable by Party A as agreed hereunder.

6.3 Party B shall be entitled to urge repayment of Party A in case of supervision evasion and default on principal and interest.

6.4 Party A shall settle the creditor's right of Party B in the following sequence, unless otherwise agreed:

(1) Fees for realization of creditor's right and guaranteed right (including but not limited to fees for collection, litigation, assessment, preservation, announcement, lawyer, implementation and travel); (2) Interest penalty; (3) Liquidated damages; (4) Interest; (5) Principal.

6.5 Party B shall promptly issue the loan as agreed hereunder, unless delayed for reasons of Party A.

6.6 During the performance of this Contract, in case of any changes of Party B's mailing address (such as domicile and contact number), Party B shall notify Party A in 3 days after such changes.

6.7 Within the validity hereof, Party B shall be entitled to have its creditor's right hereunder wholly or partially transferred without Party A's consent, but shall give corresponding written notice to Party A. Party A shall continue to perform all its duties hereunder despite such transfer.

6.8 Party B shall be entitled to exercise other rights legally permitted and agreed hereunder.

**Article VII Acceleration of Maturity**

Within the validity hereof, in occurrence of any of the following circumstances, Party B shall be entitled to declare the loan hereunder to be due and require Party A to immediately repay the loan principal and settle the loan interest.

7.1 Party A offers false certificates and documents to Party B.

7.2 Party A changes the usage of any portion of the loan without Party B's authorization.

7.3 Party A takes any guarantee-natured action such as providing for any third Party any guarantee or undertaking any debt liability without Party B's authorization.

7.4 Party A refuses or prevents Party B from carrying out supervision and check on the loan usage status.

7.5 Party A fails to perform any of the duties agreed hereunder, or Party A breaches any of the statements or warranties agreed hereunder;

7.6 Party A is (likely to be) involved in any grave litigation, arbitration or other legal disputes, suffers significant economic loss or financial position deterioration or any other solvency-influencing event, or meets with any other situation that influences the repayment capacity.

Shanghai Fukong Interactive Entertainment Co., Ltd. (seal on the perforation)

Zhongtie Dacheng (Zhuhai) Asset Management Co., Ltd. (seal on the perforation)

**Article VIII Liability for Breach of Contract**

8.1 If Party A fails to repay the principal, pay the interest and settle other payables on the date agreed hereunder, Party A must, in addition to the full payment thereof, pay to Party B 1‰ of the balance due per day otherwise as liquidated damages.

8.2 If Party A fails to use the loan as per required usage hereof, Party A must pay to Party B 1‰ of the appropriated amount per day as liquidated damages.

8.3 After this Contract is signed, if Party A unilaterally dissolves this Contract without Party B's consent, Party A must pay to Party B 30% of the loan amount hereunder as liquidated damages.

8.4 If Party A breaches this Contract and leads to Party B's filing of a lawsuit for realization of the creditor's right, Party A shall assume all expenses incurred by Party B in such course, which includes without limitation the fees for collection, litigation, assessment, preservation, announcement, lawyers, implementation, travel, etc.

**Article IX Notice Delivery**

9.1 The date of delivery of any notice agreed hereunder or necessitated during the contract performance are subject to the following clauses:

9.1.1 For mails, the date of delivery shall be the one shown on the postmark.

9.1.2 For faxes, the date of delivery shall be the one of faxing.

9.1.3 For delivery by hand, the date of delivery shall be the one the recipient signs for receipt.

9.1.4 For delivery by express, the date of delivery shall be 3 days after the one of delivery.

9.2 The contact addresses filled hereunder by both Parties shall meanwhile serve as their effective mailing ones.

**Article X Validation, Alteration, Modification, Effectiveness and Dispute Resolution**

10.1 This Contract shall come into effect since the date the legal representatives/authorized signatories of both Parties sign and stamp hereon.

10.2 After its validation, neither Party may make any alteration or modification without authorization. Any necessary alteration or modification hereof shall be agreed upon by both Parties in the form of a written supplementary agreement.

10.3 All annexes hereof and all documents relevant hereto shall be deemed as indispensable parts of this Contract with the same legal effect, unless specified otherwise.

10.4 For any issues unmentioned hereunder, both Parties may sign the supplementary agreement separately; if there is any discrepancy between this Contract and the supplementary agreement, the latter shall prevail.

10.5 This Contract is in <u>two</u> copies, both with the same legal effect, and each Party shall keep one respectively.

10.6 The conclusion, effectiveness, explanation, performance, modification, termination and dispute resolution shall be subject to Chinese laws. All disputes arising from the contract performance shall be firstly settled through good-faith negotiation; if such negotiation fails, either Party may be entitled to initiate arbitration to Beijing Arbitration Commission.

**Article XI Confidentiality**

11.1 All clauses hereunder as well as this Contract shall be regarded as the confidential information, and neither Party may disclose it to any third Party (exclusive of the senior officers, directors, employees, agents and professional consultants involved herein as well as shareholders of both Parties); however, it would be acceptable if either Party is required by law to disclose the information hereof to the government, the general public or the shareholders, or submit this Contract to relevant institutions for filing.

11.2 This clause shall be of eternal legal effect no matter whether this Contract would be altered, dissolved or terminated subsequently.

**Article XII Special Provision**

Party B shall, since the date all issues described in Paragraph 3.2 of Article III hereunder are completed (subject to the date on which the final issue is completed), complete the loan-lending duty hereunder within 30 business days ("lending period" hereinafter). If Party B fails to perform the said duty, this Contract shall be terminated, in which case neither Party needs to be accountable to the other (except the situation that Party A agrees on lending period extension).

Shanghai Fukong Interactive Entertainment Co., Ltd. (seal on the perforation)

Zhongtie Dacheng (Zhuhai) Asset Management Co., Ltd. (seal on the perforation)

**Article XIII Miscellaneous**

13.1 Within the validity hereof, if there are any changes of Party A's name, mailing address or contact information without being notified to Party B, then all instruments sent by Party B to Party A as per contact details specified hereunder would be deemed as delivered.

13.2 In cases that Party A evades Party B's supervision, defaults on the loan principal and interest, and attempts to evade repayment obligations, Party B shall be entitled to report such cases to relevant organs and have them announced through the news media.

**Article XIV Important Note**

The Lender has made sufficient explanations and notes to the Borrower regarding all clauses hereunder, and the Borrower has expressed full and accurate understanding thereof and acknowledged that any conduct of fraud or breach of contract would lead to assumption of corresponding legal liabilities. In conclusion, both the sign Parties have reached the consistent understanding of definitions of all clauses hereunder.

(No Context Hereinafter)

Shanghai Fukong Interactive Entertainment Co., Ltd. (seal on the perforation)
Zhongtie Dacheng (Zhuhai) Asset Management Co., Ltd. (seal on the perforation)

[This page contains no context, and serves as the signing page of the Loan Contract
(Contract Number: ZTDC-JKHT1711-06)]

This Contract is signed by the following Parties:



Party A (seal): Shanghai Fukong Interactive Entertainment Co., Ltd.



Legal Representative/Authorized Signatory (signature): Wang Xiaoqiang

November 16, 2017



Party B (seal): Zhongtie Dacheng (Zhuhai) Asset Management Co., Ltd.



Legal Representative/Authorized Signatory (signature): Cen Jing

November 16, 2017

# 证明书

　　我，何燕，律师执业证号：【1110120080741502】，作为中铁大成（珠海）投资管理有

限公司委托的律师，特此证明合同编号：ZTDC-JKHT1711-06《借款合同》的复印件和原件

一致，都是真实且有效的文件。

姓名：（签名）

职称：律师

律师事务所：北京中银律师事务所

2021、6、21

# CERTIFICATE

I, **TAO HE**, as the counsel for Zhongtie Dacheng (Zhuhai) Investment Management Co., Ltd.,

Chinese bar license No. [1110120080741502], hereby certify that the annexed copy of *Loan*

*Contract (Contract Number: ZTDC-JKHT1711-06)* has been compared with the original

document in my possession or control, and that the same is true copy of said original.

[signature]

Name: *Tao He*

Title: lawyer

Firm: Beijing Zhong Yin law Firm

2021. 6. 21

## AFFIDAVIT OF YUNAN ZHANG

I, **YUNAN ZHANG,** Translator, from TalkingChina Translation Services Co., Ltd. of Rm. 8E,

Xin'an Building (E), No. 200 Zhengning Rd., Shanghai, P.R.C. swear:

1.   I am proficient in both Mandarin and English. Mandarin is my native language and I have been speaking English for 6 years.

2.   I learned English from middle school to college in China. I obtained a Master's Degree in Translation And Interpreting from a university in Shanghai, China in 2015.

3.   I have been asked to confirm that the translation of the following document is an accurate translation from Mandarin into English:

   *Loan Contract  (Contract Number: ZTDC-JKHT1711-06)*

4.   I can confirm that the above original document has been translated accurately from Mandarin into English, both versions of which are attached to this affidavit.


YUNAN ZHANG

DATE: 06/21/2021


TalkingChina Translation Services Co., Ltd.

# EXHIBIT B

## 履约连带责任保证担保函

致：中铁大成（珠海）投资管理有限公司

鉴于贵方与上海富控互动娱乐股份有限公司（以下简称"富控互动"）于 2017 年 11 月 16 日签订了编号为 **ZTDC-JKHT1711-06** 的《借款合同》（以下简称 "主合同"）。根据主合同约定，贵方需向富控互动发放不低于人民币叁仟万元整（￥30,000,000.00）的借款。为了保证贵方依据主合同所享有的权利得以实现，本保证人（见附件：保证人身份证复印件）自愿依照本履约连带责任保证担保函（以下简称"本函"）的条款和条件，向贵方提供如下保证担保：

1、本保证人自愿且无条件为富控互动履行主合同提供连带责任保证担保，担保富控互动完全依照约定履行主合同项下的全部义务。在主合同规定的债务履行期届满前，如贵方根据主合同约定提前向富控互动追索，本保证人亦应在本函第 2 条所确定的保证范围内承担连带保证责任。

2、保证范围为：主合同项下之借款本金、利息、罚息、违约金、损害赔偿金、实现债权和担保权利的费用（包括但不限于催收费、诉讼费、评估费、保全费、公告费、律师费、执行费、差旅费等）以及所有富控互动依据主合同应当支付的其他费用。

3、保证期间为：自主合同项下借款期限届满之日起二年。主合同项下借款展期的，本保证人予以认可，贵方可无须另行知会本保证人，本保证之保证期间相应顺延。

4、本保证人确认：贵方收到本函后，如主合同项下条款发生任何变更或补充（本函第 3 条情形除外），在征得本保证人的同意后，本保证人予以认可，且不影响本保证人依据本函所承担的连带保证担保责任。

5、本保证人确认：本函是独立、持续有效、不可撤销和无条件的，即在富控互动未履行完毕主合同项下的全部义务前，本函的效力、保证人的保证担保责任和义务不会终止或解除。

6、本函不受主合同效力的影响，不受富控互动与任何单位签订的任何协议、文件的影响，也不因富控互动的欺诈、重组、停业、解散、清算、破产等任何变化而变化。本保证人的保证责任也不因受到任何指令、自身财务状况的改变、与任何单位或个人签订的任何协议而免除。即使在同时有抵/质押担保或其他保证人的情况下，贵方放弃或解除抵、质押担保或解除其他保

- 1 -

证人保证责任，本保证人依然按本函的保证范围对贵方承担保证责任。

7、本保证人对主合同项下的本金利息不行使抗辩权（包括但不限于一般抗辩权、顺序履行抗辩权、债务清偿比例抗辩权等），在富控互动不履行或不完全履行主合同项下之义务时，贵方可直接向本保证人追索，本保证人无条件在贵方追索之日代为清偿本金利息。

8、对于贵方主张的罚息、违约金、损害赔偿金、实现债权和担保权利的费用（包括但不限于催收费、诉讼费、评估费、保全费、公告费、律师费、执行费、差旅费等）以及所有富控互动依据主合同应当支付的其他费用，在贵方向本保证人发出书面通知之日起三日内，本保证人代为履行。

9、本保证人出具本函是本保证人的真实意思表示，不存在任何欺诈或胁迫或重大误解之因素。

10、本函所使用术语，除另有明确说明外，均具有与主合同规定相同的含义。

11、本函适用中华人民共和国的法律，因本函所产生的争议，本保证人同意采取主合同所约定的纠纷解决方式。

12、本函自本保证人签字之日起生效。

13、本函一式贰份，贵方与本保证人各持壹份，具有同等法律效力。

特此致函！

保证人（签字）：

2017 年 11 月 16 日

## Letter of Guarantee for Joint and Several Liability of Performance

To: Zhongtie Dacheng (Zhuhai) Investment Management Co., Ltd.

WHEREAS you and Shanghai Fukong Interactive Entertainment Co., Ltd. ("Fukong Interactive" hereinafter) signed the *Loan Contract* (Contract Number: **ZTDC-JKHT1711-06**) (the "Main Contract" hereinafter) on November 16, 2017. Pursuant to the Main Contract, you shall lend to Fukong Interactive a loan no less than ￥30,000,000.00 (RMB Thirty Million). To guarantee the realization of your right under the Main Contract, the Guarantors (See the Annex: the Duplicate of the Guarantors' Business License) voluntarily offer the following guarantee for you in accordance with the terms and conditions of this Letter of Guarantee for Joint and Several Liability of Performance ("this Letter" hereinafter):

1. The Guarantors voluntarily and unconditionally offer the joint and several liability guarantee for Fukong Interactive's performance of the Main Contract, and guarantees that Fukong Interactive will fully perform all duties under the Main Contract as agreed. In the event that you exercise the right of recourse against Fukong Interactive before expiry of the debt performance period stipulated by the Main Contract, the Guarantors shall also undertake the joint and several guarantee liability within the guarantee coverage defined in Article 2 of this Letter.

2. The guarantee coverage shall include: the loan principal, interest, interest penalty, liquidated damages, damage awards, fees for realization of creditor's right and guaranteed right (including but not limited to fees for collection, litigation, assessment, preservation, announcement, lawyer, implementation and travel) and all other fees payable by Fukong Interactive pursuant to the Main Contract.

3. The guarantee period is two years after the date of expiry of the loan period under the Main Contract. The Guarantors shall accept any loan period extension under the Main Contract, in which case you need not inform the Guarantors, and the guarantee period hereunder shall be extended accordingly.

4. The Guarantors confirm that: After your receipt of this Letter, in the event of any change or supplementation to any clause of the Main Contract (except the situation described in Article 3 of this Letter), the Guarantors may give permission and accept it, which will have no influence on the joint and several guarantee liability undertaken by this Letter.

5. The Guarantors confirm that: This Letter is independent, continuously effective, irrevocable and unconditional; in other words, the effect of this Letter as well as the guarantee liability and duty of the Guarantors will not be terminated or relieved prior to Fukong Interactive's completion of all its duty performance under the Main Contract.

6. This Letter shall be free from neither the validity of the Main Contract nor any agreement or document signed between Fukong Interactive and any other entity; it will not be changed due to any change of Fukong Interactive (such as fraud, reorganization, cessation, dissolution, liquidation or bankruptcy), too. Besides, the guarantee liability of the Guarantors shall not be exempted due to any order, any change in financial position or any agreement signed between the Guarantors and any other entity/individual. The Guarantors will always undertake for you the guarantee liability within the guarantee coverage even though there exists simultaneously any mortgage/pledge guarantee or any other guarantor, or you waive or discharge any mortgage/pledge guarantee or any other guarantor.

7. The Guarantors shall not exercise the right of defense (including but not limited to the right of general defense, sequence right of defense, debt service ratio right of defense, etc.) against the principal and interest under the Main Contract. If Fukong Interactive fails to (fully) perform duties under the Main Contract, you may directly exercise the right of recourse against the Guarantors, who will unconditionally pay off the principal and interest on behalf of Fukong Interactive on the day of your recourse.

8. For the interest penalty, liquidated damages, damage awards, fees for realization of creditor's right and guaranteed right (including but not limited to fees for collection, litigation, assessment, preservation, announcement, lawyer, implementation and travel) and all other fees payable by Fukong Interactive pursuant to the Main Contract that you claim, the Guarantors will pay them off on behalf of Fukong Interactive within three days after receipt of your written notice.

9. This Letter is the declaration of the Guarantors' genuine intention, and contains no fraud, coercion or gross misunderstanding.

10. The terminology of this Letter shall mean the same as the Main Contract clauses do, unless expressly stated otherwise.

11. This Letter shall be applicable to the laws of the People's Republic of China, and the Guarantors agree to settle all disputes arising from this Letter in the same way as agreed under the Main Contract.

12. This Letter shall come into effect since the date it is signed and stamped by the legal representatives (or authorized signatories) of the Guarantors.

13. This Letter is in two copies, both with the same legal effect, and you and the Guarantors shall keep one respectively.

It is hereby specified.

Guarantors (signatures):

Yan Jinggang                    Liang Xiuhong

November 16, 2017

- 2 -

## AFFIDAVIT OF YUNAN ZHANG

I, **YUNAN ZHANG,** Translator, from TalkingChina Translation Services Co., Ltd. of Rm. 8E,

Xin'an Building (E), No. 200 Zhengning Rd., Shanghai, P.R.C. swear:

1.    I am proficient in both Mandarin and English. Mandarin is my native language and I have
      been speaking English for 6 years.

2.    I learned English from middle school to college in China. I obtained a Master's Degree in
      Translation And Interpreting from a university in Shanghai, China in 2015.

3.    I have been asked to confirm that the translation of the following document is an accurate
      translation from Mandarin into English:

      *Loan Contract  (Contract Number: ZTDC-JKHT1711-06)*

4.    I can confirm that the above original document has been translated accurately from
      Mandarin into English, both versions of which are attached to this affidavit.


YUNAN ZHANG

DATE: 06/21/2021


TalkingChina Translation Services Co., Ltd.

# EXHIBIT C

# 公　证　书

中华人民共和国北京市方圆公证处

# 裁决书

# ARBITRAL AWARD



**BIAC**

北京仲裁委员会
Beijing Arbitration Commission

北京国际仲裁中心
Beijing International Arbitration Center

# 北 京 仲 裁 委 员 会
## 裁 决 书

（2020）京仲裁字第 0455 号

申 请 人：中铁大成（珠海）投资管理有限公司

住 　　 所：广东省珠海市横琴新区宝华路 6 号 105 室
　　　　　 -27185（集中办公区）

法定代表人：岑 菁 　　 总经理

委托代理人：何 焘 　　 北京市中银律师事务所律师

委托代理人：琚海波 　　 北京市中银律师事务所律师

被 申 请 人：上海富控互动娱乐股份有限公司

住 　　 所：上海市虹口区广粤路 437 号 2 幢

法定代表人： 叶建华 　　 总经理

委托代理人： 王曦明　　德恒上海律师事务所律师

委托代理人： 李原草　　德恒上海律师事务所律师

委托代理人： 巩志芳　　北京衡宁律师事务所律师

被 申 请 人：上海中技企业集团有限公司

住　　　所：上海市虹口区霍山路 201 号 3 幢 108 室

法定代表人：杨福茂

被 申 请 人：颜静刚

身份证号码：332623197812274574

住　　　址：上海市虹口区凉城路 357 弄 14 号 1101 室

被 申 请 人：梁秀红

身份证号码：332623197811175363

住　　　址：上海市虹口区凉城路 357 弄 14 号 1101 室

北京仲裁委员会（以下简称本会）根据申请人中铁大成（珠海）投资管理有限公司（以下简称申请人）向本会提交的仲裁申请书，以及申请人与被申请人上海富控互动娱乐股份有限公司（以下简称被申请人一）于 2017 年 11 月 16 日签订的编号为 ZTDC-JKHT1711-06 的《借款合同》（以下简称《借款合同》）、申请人与被申请人上海中技企业集团有限公司（以下简称被申请人二）、被申请人颜静刚（以下简称被申请人三）、被申请人梁秀红（以下简称被申请人四，与被申请人一、二、三合称被申请人）于 2017 年 11 月 16 日签订的二份《履约连带责任保证担保函》中的仲裁条款（简称《担保函》，与《借款合同》合 称本案合同）及有关法律的规定，于 2018 年 11 月 20 日受理了申请人与被申请人之间因本案合同所引起的争议仲裁案（以下简称本案）。本案编号为(2018)京仲案字第 4111 号。

本案适用本会自 2015 年 4 月 1 日起施行的《北京仲裁委员会仲裁规则》（以下简称仲裁规则）中的普通程序的规定。

本会受理本案后，向申请人送达了本案受理通知、仲裁规则及仲裁员名册，并向被申请人送达了申请人提交的全部仲裁材料、答辩通知、以及仲裁规则和仲裁员名册。

2019 年 1 月 25 日，本会收到被申请人一提出的管辖权异议申请书，本会送达了各方当事人。

2019 年 6 月 11 日，本会作出《关于（2018）京仲案字第 4111 号仲裁案管辖权问题的决定》认为，本案管辖权问题涉及实体问题的查明和审理，决定授权仲裁庭就管辖权问题作出决定。

因各方未能按期选定仲裁员，各方亦未按期共同选定首席仲裁员，依据本会仲裁规则，本会主任指定程慧平女士担任本案首席仲裁员、指定丁丁女士、朱伟一先生担任本案仲裁员，于 2019 年 6 月 11 日组成仲裁庭。同日，仲裁庭决定于 2019 年 7 月 11 日开庭审理本案。本会按照仲裁规则的规定向各方送达了组庭通知、开庭通知。各方在开庭前均未对仲裁庭组成方式和组成人员提出异议。

仲裁庭审阅了当事人提交的全部书面材料，于 2019 年 7 月 11 日在北京对本案进行开庭审理。申请人的委托代理人和被申请人一的委托代理人到庭出席了庭审。经本会书面通知，被申请人二、被申请人三、被申请人四无正当理由未到庭，仲裁庭根据《中华人民共和国仲裁法》（以下简称《仲裁法》）和仲裁规则的规定，决定对本案进行缺席审理。庭审中，被申请人一当庭提交《回避申请书》，申请首席仲裁员程慧平女士回避。仲裁庭庭审中止。本会向仲裁庭全体成员及各方当事人送达了被申请人一的回避申请书，申请人不同意回避申请，其余被申请人未对被申请人一申请首席仲裁员回避事项发表书面意见。2019 年 11 月 5 日，本会主任作

出《关于（2018）京仲案字第 4111 号仲裁案仲裁员程慧平
不予回避的决定》，认为被申请人一并未举证证明首席仲裁
员程慧平女士存在应当回避的情形，驳回被申请人一的回避
申请，仲裁员程慧平女士继续审理本案。

仲裁庭决定于 2019 年 12 月 17 日再次开庭审理本案，
并将开庭通知送达各方当事人。

2019 年 12 月 17 日，仲裁庭如期在北京开庭审理本案。
申请人的委托代理人和被申请人一的委托代理人到庭出席
了庭审。经本会书面通知，被申请人二、被申请人三、被申
请人四无正当理由未到庭，仲裁庭根据《仲裁法》和仲裁规
则的规定，决定对本案进行缺席审理。仲裁庭听取了申请人
陈述的事实与理由、被申请人一的答辩，组织双方进行了举
证、质证，对与本案有关的事实进行了调查和核实，并听取
了双方的辩论意见和最后陈述意见。

基于本案实际情况，经首席仲裁员申请，由本会秘书长
批准，本案审限予以延长。

本案现已全部审理完结。仲裁庭根据庭审情况和证据材
料，依照相关法律及仲裁规则规定，经合议，作出本裁决。

现将本案案情、仲裁庭意见和裁决分述如下：

一 案 情

（一）申请人的仲裁申请

申请人称：2017年11月16日，申请人与被申请人一签订《借款合同》，约定被申请人一向申请人借款3000万元（指人民币，下同，仲裁庭注），借款期限自借款合同约定的事项全部办理完毕且通过银行划付借款之日（借款发放之日）起届满9个月之当日，借款年利率20%。利息支付方式为，自借款发放之日起届满1个月之当日，被申请人一应向申请人支付第一个月借款利息，自借款发放之日起届满2个月之当日，被申请人一应向申请人支付第二个月借款利息，以后支付利息的日期和金额，依此类推。被申请人二、被申请人三、被申请人四依法向申请人出具了书面的《担保函》。

2017年12月22日，申请人按双方合同约定将借款本金划拨至被申请人一指定的银行账户。至此，申请人依约履行完毕借款合同约定的全部义务。但被申请人一未按借款合同约定向申请人支付借款利息，也未在借款合同约定的借款期限届满之当日偿还借款本金。

为此，申请人依据本案合同中约定的仲裁条款提起仲裁，其仲裁请求为：

1. 被申请人一向申请人偿还借款本金共计 1500 万元；

2. 被申请人一向申请人支付借款利息：（1）2017 年 12 月 22 日至 2018 年 9 月 28 日期间的利息，3000 万元×280 天×20%÷360 天＝466.67 万元；（2）2018 年 9 月 29 日至

4

2018 年 11 月 20 日期间的利息：2250 万元×52 天×20%÷360 ＝65 万元；（3）2018 年 11 月 21 日至被申请人一实际足额偿还完毕借款本金 1500 万元之日止的计算方式：1500 万元×天数×20%÷360 天；

3. 被申请人一向申请人支付律师费 10000 元；

4. 本案仲裁费用由被申请人一全部承担；

5. 被申请人二、被申请人三、被申请人四对上述第 1 项至第 4 项仲裁请求承担连带责任。

申请人为支持其仲裁请求，向仲裁庭提交了如下证据材料：

证据 1.《借款合同》；

证据 2.《担保函》；

证据 3. 委托收款函；

证据 4. 银行回单；

证据 5. 委托代理合同及律师费发票。

申请人出示了全部证据的原件，经核对，证据原件与复印件一致。被申请人一对申请人全部证据的真实性均予以认可，对关联性均不认可。

（二）被申请人的答辩意见

被申请人一答辩称：第一，《借款合同》不实，其记载的内容不是被申请人一的真实意思表示，被申请人一并非真实借款人，不应当承担1500万元的返还责任；第二，申请人

所主张的自2017年12月22日至2018年9月28日期间以3000万元为基准计算的利息没有依据，其余两项利息也没有依据；第三，因被申请人一并非本案真实借款人，不应当承担本案的律师费；第四，本案仲裁费不应当由被申请人一承担。

被申请人一为支持其答辩意见，向仲裁庭提交如下证据材料：

证据1.《上海富控互动娱乐股份有限公司章程》（2017年6月）；

证据2.《上海证券交易所股票上市规则》（2014版节选）；

证据3.上海杰佩实业有限公司《企业信用信息公示报告》；

证据4. 2018沪74民初1301号民事判决书；

证据5.编号DB-ZTDC《协议书》《债权债务结清确认函》；

证据6.苏州正悦企业管理有限公司《企业信用信息公示报告》；

证据7.《关于撤销（2018）京仲案字第1421号争议仲裁案的决定》；

证据8.吴汝清银行凭证；

证据9.吴汝清《公证书》。

被申请人一出示了证据8、证据9的原件，经核对，证据8、证据9原件与复印件一致。申请人对被申请人一全部证据的真实性均予以认可，对证明目的均不认可。

6

被申请人二、被申请人三、被申请人四未参加本案庭审，也未提书面意见和证据材料。

二 仲裁庭意见

（一）关于本案的事实

2017 年 11 月 16 日，申请人作为乙方（出借人）、被申请人一作为甲方（借款人），双方签订《借款合同》，主要约定：

1. 借款金额不低于 3000 万元（实际借款金额以出借人通过银行划付借款的凭证所载金额为准），借款利率为年利率 20%，借款用途为流动资金，借款期限自本合同第三条第 3.2 款约定的事项全部办理完毕且乙方通过银行划付借款之日（借款发放之日）起届满 9 个月之当日（每个月按 30 个自然日计算，下同）；借款发放之日起届满 1 个月之当日，甲方向乙方支付第一个月借款利息，自借款发放之日起届满 2 个月之当日，甲方向乙方支付两个月借款利息，以后支付利息的日期及金额，依此类推；

2. 第三条 3.1.1 甲方需将指定的收款账户于乙方划付借款之前通过《委托收款函》书面送达乙方，乙方将借款付至甲方指定账户之当日即视为起息日，乙方在银行划付借款的凭证为本合同项下借款发放及本息偿还的有效证据；

7

3.1.2 乙方将借款付至《委托收款函》约定的甲方指定账户之日，则视为乙方已履行完毕本合同项下的义务；3.2 在下列条件全部符合时，乙方才可发放借款（1）甲方未发生或不存在本合同所约定的任一条款违约事件或违约行为；（2）本合同已经双方签署并生效；

3.第八条违约责任 甲方未按合同约定偿还借款、支付利息及其他应付费用，除必须按数支付外，需向乙方支付欠款金额每日 1‰的违约金；因甲方违约致使乙方采取诉讼方式实现债权的，甲方应承担乙方为实现债权而支付的全部相关费用，该费用包括但不限于催收费、诉讼费、评估费、保全费，公告费，律师费，执行费，差旅费等。在履行合同过程中发生的一切争议，各方应友好协商解决，协商不成的，各方均有权向北京仲裁委员会提起仲裁。

同日，被申请人二、被申请人三和被申请人四作为保证人，向申请人出具二份《担保函》，主要内容为：

1. 为保证申请人依据《借款合同》所享有的权利得以实现，保证人自愿且无条件为被申请人一提供连带责任保证担保；保证范围为《借款合同》项下之借款本金、利息、罚息、违约金、损害赔偿金、实现债权和担保权利的费用以及所有被申请人一依据《借款合同》应当支付的其他费用；

2. 保证期间为自《借款合同》项下借款期限届满之日起两年；

8

3. 因《担保函》所产生的争议，保证人同意采用《借款合同》所约定的纠纷解决方式。

同日，被申请人一向申请人出具《委托收款函》，载明：因业务需要，被申请人一委托上海杰佩实业有限公司（以下简称杰佩实业）代被申请人一收取申请人拟发放的借款 3000 万元（最终数额以实际发放的借款金额为准），并请申请人将《借款合同》项下的借款金额支付至《委托收款函》中指定的杰佩实业账户，指定账户收到款项后即视为被申请人一收款，同时亦视为申请人已履行完毕《借款合同》项下的出借义务，若由此引发的一切责任或纠纷由被申请人一承担。

2017 年 12 月 22 日，申请人向《委托收款函》中指定的杰佩实业账户汇款 3000 万元，注明用途为借款。

2018 年 5 月 28 日，本会受理申请人就与被申请人一、浙江尤夫高新纤维股份有限公司（以下简称浙江尤夫）、被申请人二、被申请人三、被申请人四之间签订的《借款合同》、三份《履约连带责任保证担保函》引起的争议所提交的仲裁申请，案件编号为（2018）京仲案字第 1421 号。

2018 年 7 月 17 日，申请人与苏州正悦投资管理有限公司（以下简称苏州正悦）签订编号为 DB-ZTDC《协议书》，主要约定：申请人同意将《借款合同》项下本金中的 1500 万元转让给苏州正悦，转让价格为 1500 万元，第一笔转让款付款时间为 2018 年 9 月 30 日之前支付 50%；申请人收到

第一笔转让款后应在 5 个工作日内向本会提交撤裁申请书，
撤回对浙江尤夫的仲裁申请；苏州正悦收到申请人提供本会
同意撤裁决定书后在 5 个工作日内向申请人支付第二笔 50%
的债权转让款；苏州正悦按照本协议约定支付全部转让款
时，浙江尤夫对《借款合同》的所有担保责任即自动免除，
申请人不再对浙江尤夫提出任何履行保证担保的请求和其
他权利主张。申请人在庭审中认可苏州正悦已委托第三方上
海壵阔企业管理中心有限合伙按照上述约定向其支付转让
款 1500 万元，支付时间分别是 2018 年 9 月 29 日支付 750
万，2018 年 11 月 28 日支付 750 万。

2018 年 11 月 20 日，依据申请人提交的撤回仲裁请求申
请，本会作出（2018）京仲撤字 0787 号《关于撤销（2018）
京仲案字第 1421 号争议仲裁案的决定》，决定撤销该案。
同日，申请人向本会提出本案仲裁申请。

另查明，在《借款合同》签订时，被申请人三持有被申
请人二 95%股权。被申请人一在庭审中认可被申请人三仍是
被申请人一的实际控制人。

申请人因《借款合同》纠纷案与北京市中银律师事务所
签订《委托代理合同》，约定律师费为 10000 元。

（二）关于本案合同效力

申请人与被申请人一签订的《借款合同》是否为被申请
人一的真实意思表示是本案的主要争议焦点。被申请人一认

10

为《借款合同》约定的借款金额没有上限，在《借款合同》并没有经过被申请人一公司权力机关决议的情况下，申请人仍将借款打入了与被申请人一没有关联的第三方公司杰佩实业，说明申请人在借款的过程中并非善意的借款人，依据《合同法》第五十条规定，法定代表人越权代表的行为不应当约束公司，故《借款合同》不能代表被申请人一的真实意思表示。

仲裁庭认为，《借款合同》上有双方当事人的公章和法定代表人签字，公章和法定代表人签字可以对外代表公司的意思表示，被申请人一对其公章和签字的真实性并未提出异议，也未提交予以反驳的相反证据。被申请人一提交的证据1《上海富控互动娱乐股份有限公司章程》以及证据2《上海证券交易所股票上市规则》，均为对被申请人一自身具有约束力的文件，其未提交证据证明申请人应当接受这两份文件的约束，也未举出法律法规对法定代表人代表公司对外签订《借款合同》有特别规定的依据，因此，被申请人一提交的证据不能有效证明被申请人一的法定代表人系超越权限签订《借款合同》，更不能有效证明申请人对此知道或者应当知道。在借款法律关系中，约定借款金额的上限或者下限、在履行中以实际划款确定借款金额，以及约定由第三方代为收取款项，均是较为常见的现象，被申请人一以《借款合同》约定的借款金额没有上限、借款打入了与被申请人一没有关

联的第三方公司杰佩实业为由主张申请人并非善意相对人，仲裁庭不予采信。

被申请人二、被申请人三和被申请人四向申请人出具的二份《担保函》上，有各方当事人的公章或签字，被申请人二、被申请人三和被申请人四对《担保函》的真实性均未提出异议。

因此，根据现有证据，仲裁庭认为本案合同是各方当事人的真实意思表示，内容不违反法律、行政法规的强制性规定，应属合法有效。

（三）关于被申请人一的管辖权异议

被申请人一向本会提出管辖权异议，认为其作为上市公司对公账管理有严格限制，经内部审查，未发现有关于《借款合同》的用章记录，无法确认《借款合同》中被申请人一公章的真实性，因而在《借款合同》中公章真实性无法确认的情况下，本会对本案没有管辖权。申请人则认为《借款合同》加盖了双方的公章，是双方真实意思表示，且其中的仲裁条款约定明确，因此本会对本案有管辖权。其他被申请人未就管辖权问题发表意见。

对于，仲裁庭注意到，虽然被申请人一提出了对于《借款合同》中其公章提出质疑，但是并未向仲裁庭提交书面的公章鉴定申请，也未能向仲裁庭提交关于《借款合同》中其公章可能系伪造或是存在其他足以使得仲裁庭对于《借款合

同》是否系其真实意思表示产生怀疑的证据，且在本案庭审中被申请人一亦认可《借款合同》的真实性。同时，被申请人一所述公章管理手续系其内部管理制度，在被申请人一并未举证证明存在因为该制度可能影响其真实意思表示或是《借款合同》及其仲裁条款效力的情况下，仲裁庭对于被申请人一这一抗辩不予采信。因此，在被申请人一并未举证证明存在《仲裁法》规定的仲裁协议无效或是其他足以影响本会对本案管辖权的情况下，仲裁庭驳回被申请人一提出的管辖权异议，本会对本案有管辖权。

（四）关于申请人的仲裁请求

1. 关于被申请人一偿还借款本金的仲裁请求

申请人要求被申请人一偿还借款本金 1500 万元，被申请人一认为其不是真实借款人，不同意承担还款责任。

仲裁庭认为，《借款合同》明确约定被申请人一通过《委托收款函》向申请人指定收款账户，申请人将借款付至被申请人一指定账户即视为履行完毕出借款项的义务。申请人在本案中提交的证据表明其已向被申请人一在《委托收款函》中指定的杰佩实业账户转入借款 3000 万元，故可以认定申请人已按照《借款合同》约定履行了出借义务，依法应对被申请人一享有债权。在被申请人一未提交有效证据推翻《借款合同》的真实性以及合法有效性的情况下，其关于不是真实借款人的主张，不能成立，也不能有效对抗申请人依据《借

13

款合同》对其享有的债权。《借款合同》约定的借款期限已届满，被申请人一作为借款人，应当承担还款责任。申请人在本案中自认其通过债权转让已收回借款本金 1500 万元，要求被申请人一偿还剩余 1500 万元本金，申请人的自认并未加重被申请人一的还款责任，仲裁庭对此不持异议，对申请人的此项仲裁请求，予以支持。

2. 关于被申请人一支付借款利息的仲裁请求

仲裁庭认为，如前所述，被申请人一应当向申请人承担还款责任，包含借款本金和借款利息。被申请人一在庭审中主张申请人有收取"砍头息"的行为，但被申请人为此提交的证据 8、证据 9，其证据内容不能显示与本案的关联性，申请人对此不予认可，被申请人一亦未提交其他证据予以佐证，故仲裁庭不予采信。《借款合同》约定的借款期内利率标准为年利率 20%，并约定逾期还款需按日 1‰标准支付违约金。申请人在本案中主张的借款期内和逾期后的利率标准均为 20%，不高于合同的约定，仲裁庭予以支持。因申请人在庭审中自认通过债权转让收回了本案合同项下 1500 万元借款本金，分别是于 2018 年 9 月 29 日收回 750 万，2018 年 11 月 28 日收回 750 万。故被申请人一应偿还的利息应分段计算，虽然申请人自认的第二笔款项还款时间为 2018 年 11 月 28 日，但其请求中主张自 2018 年 11 月 21 日起即按照 1500 万元的本金计算利息，按其主张并未加重被申请人一的还款

14

责任，仲裁庭予以认可。因此，截止至 2018 年 11 月 20 日，被申请人一应当偿还的利息为 534.58 万元，具体计算方式如下：

| 计息本金 | 起息日 | 止息日 | 天数 | 利率 | 利息 |
|---|---|---|---|---|---|
| 3000 万元 | 2017/12/22 | 2018/9/28 | 281 | 20% | 468.33 万元 |
| 2250 万元 | 2018/9/29 | 2018/11/20 | 53 | 20% | 66.25 万元 |
| 合计 | | | | | 534.58 万元 |

鉴于申请人仅主张 531.67 万元（466.67＋65），并未超过前述金额，仲裁庭予以认可。同时，被申请人一还应当向申请人偿还自 2018 年 11 月 21 日起至实际还清之日至，以 1500 万元为基数，按照年利率 20% 计算的借款利息。

3. 关于被申请人一支付律师费的仲裁请求

申请人向仲裁庭提交了《委托代理合同》及律师费发票，用以证明其为本案委托律师，约定律师费 10000 元。仲裁庭认为，结合本案的具体情况，该律师费应由被申请人一承担。根据仲裁规则第五十一条第（四）款的规定，仲裁庭对此项仲裁请求予以支持。

4. 关于本案仲裁费的承担

结合本案具体情况，根据本会仲裁规则第五十一条的规定，仲裁庭认为，本案仲裁费应由被申请人一全部承担。

5. 关于被申请人二、被申请人三、被申请人四承担连带责任的仲裁请求

15

仲裁庭认为，被申请人二、被申请人三和被申请人四向申请人出具的二份《担保函》中明确约定，被申请人二、被申请人三和被申请人四作为保证人，就被申请人一在《借款合同》项下的还款义务向申请人提供连带责任保证担保。根据《中华人民共和国担保法》第十八条规定"当事人在保证合同中约定保证人与债务人对债务承担连带责任的，为连带责任保证。连带责任保证的债务人在主合同规定的债务履行期届满没有履行债务的，债权人可以要求债务人履行债务，也可以要求保证人在其保证范围内承担保证责任。"本案中，被申请人一在《借款合同》约定的借款期限届满后未按约向申请人还款，申请人要求被申请人二、被申请人三和被申请人四承担的保证责任未超出《担保函》约定的保证范围，故仲裁庭予以支持。

### 三 裁　决

仲裁庭依据所认定的事实，以及本案合同的约定及相关法律规定，经合议，裁决如下：

（一）被申请人一向申请人偿还借款本金 1500 万元；

（二）被申请人一向申请人支付截止至 2018 年 11 月 20 日的借款利息 531.67 万元；

（三）被申请人一向申请人支付自 2018 年 11 月 21 日起至实际还清之日至，以 1500 万元为基数，按照年利率 20% 计算的借款利息；

（四）被申请人一向申请人支付为本案支出的律师费 10000 元；

（五）本案仲裁费 149183.50 元(已由申请人全部预交)，全部由被申请人一承担，被申请人一直接向申请人支付申请人代其垫付的仲裁费 149183.50 元；

（六）被申请人二、被申请人三、被申请人四对上述第（一）至（五）项仲裁请求承担连带清偿责任。

上述裁决各项被申请人应向申请人支付的款项，被申请人应于本裁决书送达之日起十日内支付完毕。逾期支付的，按《中华人民共和国民事诉讼法》第二百五十三条的规定，加倍支付迟延履行期间的债务利息。

（本页以下无正文，接下页）

本裁决为终局裁决，自作出之日起生效。



首席仲裁员(签字)：

仲　裁　员(签字)：

仲　裁　员(签字)：

2020 年 3 月 24 日于北京



◎ 北京市朝阳区建国路118号招商局大厦16层   ◎ 16/F China Merchants Tower, No.118 Jian Guo Road, Chaoyang District, Beijing 100022, China
◎ 电话 Tel：(010) 6566 9856   ◎ 传真 Fax：(010) 6566 8078   ◎ E-mail：bjac@bjac.org.cn   ◎ 网址 Website：www.bjac.org.cn   ◎ 邮编：100022

# 公　证　书

（2021）京方圆外经证字第 01021 号

申请人：中铁大成（珠海）投资管理有限公司，住所珠海市横琴新区宝华路 6 号 105 室-27185（集中办公区）。

法定代表人：岑菁，女，1982 年 6 月 5 日出生，公民身份号码 110101198206053524。

委托代理人：琚海波，男，1988 年 10 月 10 日出生，公民身份号码 140427198810102412。

公证事项：影印件与原件相符

兹证明前面的影印件与申请人中铁大成（珠海）投资管理有限公司的委托代理人琚海波出示给本公证员的裁决书的原件相符。

中华人民共和国北京市方圆公证处

公证员　

二〇二一年三月一日

［IC500737］

# ARBITRAL AWARD

**BAC**

Beijing Arbitration Commission

Beijing International Arbitration Center



Beijing Arbitration Commission

## ARBITRAL AWARD

(2019) J.Z.C.Z.No. 0455

| | |
|---|---|
| The Applicant: | China Railway Dacheng (Zhuhai) Investment Management Co., Ltd. |
| Address: | (Centralized Office Area) Room 105-27185 No. 6 Baohua Road, Hengqin New Area, Zhuhai, Guangdong Province |
| Legal Representative: | Cen Jing    General Manager |
| Entrusted agent: | He Tao    Lawyer from Zhong Yin Law Firm |
| Entrusted agent: | Ju Haibo    Lawyer from Zhong Yin Law Firm |

| | |
|---|---|
| Respondent: | Shanghai Fukong Interactive Entertainment Co., Ltd. |
| Address: | Tower 2, No. 437 Guangyue Road, Hongkou District, Shanghai |
| Legal Representative: | Ye Jianhua    General Manager |



| Entrusted agent: | Wang Ximing | Lawyer from Deheng Law Offices, Shanghai |
| Entrusted agent: | Li Yuancao | Lawyer from Deheng Law Offices, Shanghai |
| Entrusted agent: | Gong Zhifang | Lawyer from Hengning Law Offices, Beijing |

Respondent: Shanghai Zhongji Enterprise Group Co., Ltd.

Address: Room 108, Tower 3, No. 201 Huoshan Road, Hongkou District, Shanghai

Legal Representative: Yang Fumao

Respondent: Yan Jinggang

ID Number: 332623197812274574

Residence: Room 1101, No. 14 Nong 357 Liangcheng Road, Hongkou District, Shanghai

Respondent: Liang Xiuhong

ID Number: 332623197811175363

Residence: Room 1101, No. 14 Nong 357 Liangcheng Road, Hongkou District, Shanghai



Beijing Arbitration Commission (hereinafter referred to as the Commission), based on the arbitration application submitted by the applicant China Railway Dacheng (Zhuhai) Investment Management Co., Ltd. (hereinafter referred to as the applicant) to the Commission, and the loan contract No. ZTDC-JKHT1711-06 (hereinafter referred to as the loan contract) signed between the applicant and the respondent Shanghai Fukong Interactive Entertainment Co., Ltd. (hereinafter referred to as the respondent 1) on November 16, 2017, and the arbitration clauses in the two "Performance Joint Liability Guarantee Letter" (referred to as the "Letter of Guarantee", and the "Loan Contract" collectively referred to as the contract in this case)s igned by the applicant and the respondent Shanghai Zhongji Enterprise Group Co, Ltd. (hereinafter referred to as Respondent 2), Respondent Yan Jinggang (hereinafter referred to as Respondent 3), and Respondent Liang Xiuhong (hereinafter referred to as Respondent 4, and Respondent 1, 2, and 3 are collectively referred to as Respondent) on November 16, 2017 and relevant laws and regulations, we accepted the arbitration case of dispute between the applicant and the respondents arising from the contract in this case (hereinafter referred to as the case) on November 20, 2018. The case number is (2018) J.Z.A.Z. No. 4111.

This case is governed by the ordinary procedures in the "Arbitration Rules of the Beijing Arbitration Commission" (hereinafter referred to as the Arbitration Rules) implemented by the Commission since April 1, 2015.

After accepting the case, the Commission delivered the notice of acceptance of the case, the arbitration rules and the list of arbitrators to the applicant, and served all the arbitration materials submitted by the applicant, the notice of defense, and the arbitration rules and the list of arbitrators to the respondent.

On January 25, 2019, the Commission received a jurisdiction objection application filed by Respondent 1, and the Commission served it to all parties.

1

On June 11, 2019, the Commission made the "Decision on the Jurisdiction Issues in the (2018) J.Z.A.Z.No. 4111 Arbitration Case", which held that the jurisdiction issue in this case involved the identification and trial of substantive issues, and decided to authorize the arbitration tribunal to make a decision on the jurisdiction.

Because the parties failed to select the arbitrators on schedule, and the parties did not jointly select the presiding arbitrators on time, according to the arbitration rules of this Commission, the director of this Commission appointed Ms. Cheng Huiping as the presiding arbitrator of this case, and appointed Ms. Ding Ding and Mr. Zhu Weiyi as he arbitrators of this case, and formed the arbitration tribunal on June 11, 2019. On the same day, the arbitration tribunal decided to hold a hearing on the case on July 11, 2019. According to the provisions of the arbitration rules, the Commission served the notice of the formation of the court and the notice of the hearing to all parties, and none of the parties raised any objections to the composition and members of the arbitral tribunal before the hearing.

The arbitration tribunal reviewed all the written materials submitted by the parties and held a hearing on the case in Beijing on July 11, 2019. The entrusted agent of the applicant and the entrusted agent of the respondent 1 attended the court hearing. After being notified in writing by the Commission, the Respondent 2, Respondent 3, and Respondent 4 fail to appear in court without proper reason, the arbitration tribunal shall follow the provisions of the Arbitration Law of the People's Republic of China (hereinafter referred to as the Arbitration Law) and the arbitration rules, decide to hear the case in absentia. During the trial, the respondent 1 submitted the "Application for Withdrawal" in court and applied for the recusal of Ms. Cheng Huiping, the presiding arbitrator. The arbitration tribunal was suspended. The Commission delivered the "Application for Withdrawal" of Respondent 1 to all the members of the arbitration tribunal and all parties. The applicant did not agree to the withdrawal application, and the remaining respondents did not express written opinions on the withdrawal of Respondent 1's application for the presiding arbitrator. On November 5, 2019, the director of the Commission made the

2

``Decision on the Non-Withdrawal of the arbitrator Cheng Huiping in the (2018) J.Z.A.Z. No. 4111 Arbitration Case '', and believed that the respondent 1 did not provide evidence to prove the existence of the presiding arbitrator Ms. Cheng Huiping in the circumstances that should be withdrew, the respondent 1's application for withdrawal was rejected, and Ms. Cheng Huiping, the arbitrator, continued to hear the case.

The arbitration tribunal decided to hold another hearing on the case on December 17, 2019, and would serve the notice of the hearing to all parties.

On December 17, 2019, the arbitration tribunal held a hearing in Beijing as scheduled to hear the case. The entrusted agent of the applicant and the entrusted agent of the respondent 1 attended the hearing. After being notified in writing by the Commission, Respondent 2, Respondent 3, and Respondent 4 did not appear in court without proper reasons, then the arbitration tribunal decided to try the case in absentia in accordance with the "Arbitration Law" and the arbitration rules. The arbitration tribunal listened to the facts and reasons stated by the applicant, and the respondent's defense, organized the two parties to present evidence and cross-examination, investigated and verified the facts related to the case, and heard the arguments and final statements of the two parties.

Based on the actual situation of the case, upon the application of the presiding arbitrator and approved by the Secretary-General of the Commission, the trial limit of the case was extended.

The case has now all been concluded. This award is made by the arbitration tribunal in accordance with the court hearing and evidence, relevant laws and arbitration rules.

The case has now all been concluded. The arbitration tribunal, based on the hearing conditions and evidence materials, in accordance with relevant laws and arbitration rules, will make this award after collegial discussion.

The facts of the case, the opinions of the arbitration tribunal and the award are described as follows:

I. The Case

3



(I) The applicant's application for arbitration

The applicant stated: On November 16, 2017, the applicant and the respondent 1 signed a "Loan Contract", stipulating that the respondent 1 would always borrow 30 million yuan from the applicant (referring to RMB, the same below, the arbitration tribunal note), the loan period expires 9 months from the day when all the matters agreed in the loan contract are completed and the loan is paid through the bank (the day the loan is issued), the annual interest rate of the borrowing is 20%. The interest payment method is that the respondent 1 shall pay the first month of loan interest to the applicant on the day when the loan expires 1 month from the date of loan issuance, on the day when the loan expires 2 months from the date of loan issuance, the respondent 1 shall pay the applicant the interest of the second month of loan, and the date and amount of interest shall be paid later, and so on. Respondent 2, Respondent 3, and Respondent 4 issued a written "Letter of Guarantee" to the applicant in accordance with the law.

On December 22, 2017, the applicant transferred the principal of the loan to the bank account designated by respondent 1 in accordance with the contract between the two parties. So far, the applicant has fulfilled all the obligations stipulated in the loan contract in accordance with the agreement. However, Respondent 1 did not pay the loan interest to the applicant in accordance with the loan contract, nor did it repay the loan principal on the day when the loan period agreed in the loan contract expired.

For this reason, the applicant initiated arbitration in accordance with the arbitration clause agreed in the contract of this case, and its arbitration requests were:

1.  The respondent 1 should repay a total of 15 million yuan in loan principal to the applicant;

2.  The respondent 1 should pay the applicant loan interest: (1) The interest for the period from December 22, 2017 to September 28, 2018, RMB 30 million yuan × 280 days × 20% ÷ 360 days = 4.6667 million yuan; ( 2) Interest from September 29, 2018 to November 20, 2018: 22.5 million yuan × 52 days × 20% ÷ 360 = 650,000 yuan; (3) The calculation method from



4

November 21, 2018 to the date when the actual repayment of the principal of the loan is 15 million yuan in full by the respondent: RMB 15million × days × 20% ÷ 360 days;

3. The respondent 1 shall pay attorney fees 10,000 yuan to the applicant;

4. The arbitration fee of this case shall be borne by the respondent 1;

5. The respondent 2, respondent 3 and respondent 4 shall be jointly and severally liable for the above arbitration claims mentioned in items 1 to 4.

In order to support its arbitration request, the applicant submitted the following evidence materials to the arbitration tribunal:

Evidence 1. "Loan Contract"

Evidence 2. "Letter of Guarantee";

Evidence 3. Entrusted collection letter

Evidence 4. Bank receipt;

Evidence 5. Agency contract and attorney fee invoice.

The applicant presented the originals of all the evidences, and after verification, the originals of the evidences are consistent with the copies. Respondent 1 recognized the authenticity of all the evidence of the applicant, but did not recognize the relevance.

(II) The respondents ' reply

Respondent 1 replied that: First, the Loan Contract is untrue, and the content recorded is not the true intention of Respondent 1, and Respondent 1 is not a real borrower and should not be liable for the return of RMB 15 million yuan; Second, the interest claimed by the applicant based on 30 million yuan from December 22, 2017 to September 28, 2018 has no basis, and the other two interests have no basis; third, because the respondent 1 is not the true borrower in this case and

5



should not bear the lawyer's fees in this case; fourth, the arbitration fee in this case should not be borne by the respondent 1.

Respondent 1 submitted the following evidence materials to the arbitration tribunal in support of its reply opinions:

Evidence 1. "Articles of Association of Shanghai Fukong Interactive Entertainment Co., Ltd." (June 2017);

Evidence 2. "Shanghai Stock Exchange Stock Listing Rules" (Excerpt from the 2014 edition);

Evidence 3. Shanghai Jiepei Industrial Co., Ltd. "Corporate Credit Information Publicity Report";

Evidence 4. 2018 H. 74 M.C. No. 1301 Civil Judgment;

Evidence 5. No. DB-ZTDC "Agreement" and "Confirmation Letter of Settlement of Creditor's Rights and Debts";

Evidence 6. "Corporate Credit Information Publicity Report" by Suzhou Zhengyue Enterprise Management Co., Ltd.;

Evidence 7. "Decision on Canceling (2018) J.Z.A.Z.No. 1421 Dispute Arbitration Case";

Evidence 8. Wu Ruqing's bank certificate

Evidence 9. Wu Ruqing's "Notarization"

Respondent 1 presented the originals of Evidence 8 and Evidence 9. After verification, the originals of Evidence 8 and Evidence 9 are consistent with the photocopy. The applicant recognized the authenticity of all the evidence of the respondent 1, but did not recognize the purpose of the proof.



Respondent 2, Respondent 3, and Respondent 4 did not participate in the trial of this case, nor did they submit written opinions and evidence materials.

## II. Opinions of the Arbitration Tribunal

(I) Facts about the case

On November 16, 2017, the applicant as Party B (the lender) and Respondent 1 as Party A (the borrower), the two parties signed the Loan Contract, which mainly agreed as follows:

1. The amount of the loan is not less than 30 million yuan (the actual amount of the loan is based on the amount stated in the voucher of the lender through the bank), the interest rate of the loan is 20% per annum, and the purpose of the loan is for current funds. The loan period expires 9 months from the date when all the matters stipulated in paragraph 3.2 of Article 3 of this contract are completed and Party B transfers the loan through the bank (the day the loan is issued) (calculated as 30 natural days per month, The same below); On the day the loan expires 1 month from the date of loan issuance, Party A shall pay Party B the first month of loan interest, and on the day of the expiration of 2 months from the date of loan issuance, Party A shall pay Party B the loan interest for two months, the date and amount of interest payment in the future, and so on;

2. Article 3 3.1.1 Party A shall deliver the designated collection account to Party B in writing through the "Entrusted Collection Letter" before Party B transfers the loan, and The date when Party B pays the loan to the account designated by Party A shall be regarded as the value date, and the certificate of Party B's Bank transfer of the loan shall be the effective evidence of loan issuance and repayment of principal and interest under this contract;



3.1.2 When Party B pays the loan to the account designated by Party A in the "Entrusted Collection Letter", it is deemed that Party B has fulfilled its obligations under this contract; 3.2 Party B can only issue the loan when all the following conditions are met (1) Party A has not occurred or did not have any breach of contract or breach of contract as stipulated in this contract; (2) This contract has been signed by both parties and entered into force;

3. Article 8 Liability for breach of contract If Party A fails to repay the loan, pay the interest and other expenses payable as agreed in the contract, Party A shall pay Party B a penalty of 1 ‰ of the amount owed per day in addition to the amount paid by Party A. If Party B realizes the creditor's right by litigation due to Party A's breach of contract, Party A shall bear all relevant expenses paid by Party B for realizing the creditor's right, the expenses include but are not limited to urging fees, litigation fees, assessment fees, preservation fees, announcement fees, lawyer fees, execution fees, travel expenses, etc. All disputes arising from the performance of the contract shall be settled through friendly negotiation. If the negotiation fails, each party shall have the right to bring an arbitration to the Beijing Arbitration Commission.

On the same day, respondent 2, respondent 3 and respondent 4, as guarantors, issued two "Letter of Guarantee" to the applicant, the main contents of which are as follows:

1. In order to ensure the realization of the rights of the applicant according to the loan contract, the guarantor voluntarily and unconditionally provides joint and several liability guarantee for the respondent 1; the scope of guarantee includes the loan principal, interest, penalty interest, liquidated damages, damages, expenses for realizing the creditor's rights and security rights under the loan contract, and other expenses payable by the respondent 1 according to the Loan Contract;

2. The guarantee period is two years from the expiry date of the loan period under the Loan Contract;

8



3. Due to disputes arising from the "Letter of Guarantee", the guarantor agrees to adopt the dispute resolution method stipulated in the "Loan Contract".

On the same day, Respondent 1 issued the Entrusted Collection Letter to the applicant, stating that: Due to business needs, Respondent 1 entrusted Shanghai Jiepei Industrial Co., Ltd. (hereinafter referred to as Jiepei Industrial) to collect 30 million yuan   of loans (the final amount is subject to the actual loan amount issued) to be issued by the applicant on behalf of the respondent 1, and ask the applicant to pay the loan amount under the loan contract to the Jiepei Industrial Account specified in the "Entrusted Collection Letter". After receiving the funds, the designated account will be deemed to have been received by the respondent 1, and at the same time, it will also be deemed that the applicant has fulfilled the lending obligations under the Loan Contract. If all the responsibilities or disputes caused by this shall be borne by the respondent 1.

On December 22, 2017, the applicant remitted 30 million yuan to the Jiepei Industrial Account specified in the "Entrusted Collection Letter", indicating that the purpose was borrowing.

On May 28, 2018, the Commission accepts the "Loan Contract" between the applicant and the respondent 1, Zhejiang Unifull Industrial Fibre Co., Ltd (hereinafter referred to as Zhejiang Unifull), the respondent 2, the respondent 3, and the respondent 4, three arbitration applications submitted for disputes arising from the "Performance Joint Liability Guarantee Letter", the case number is (2018) J.Z.A.Z.No. 1421.

On July 17, 2018, the applicant and Suzhou Zhengyue Investment Management Co., Ltd. (hereinafter referred to as Suzhou Zhengyue) signed the ``Agreement'' with the number of DB-ZTDC. Main agreement: the applicant agrees to transfer 15 million yuan of the principal under the Loan Contract to Suzhou Zhengyue at a transfer price of 15 million yuan. The payment time of the first transfer payment is 50% before September 30, 2018; After receiving the first

9



transfer payment, the applicant shall submit an application for revocation to the Commission within 5 working days to withdraw the application for arbitration against Zhejiang Unifull; Suzhou Zhengyue shall pay the applicant the second 50% of the creditor's rights assignment within 5 working days after receiving the applicant's agreement to dismiss the decision. When Suzhou Zhengyue pays all the transfer money in accordance with this agreement, Zhejiang Unifull will automatically be exempted from all guarantee liabilities for the Loan Contract, and the applicant will no longer request Zhejiang Unifull to perform the guarantee and other claims. In the trial, the applicant recognized that Suzhou Zhengyue had entrusted a third-party Shanghai Yaokuo Enterprise Management Center Limited Partnership to pay the transfer payment of 15 million yuan in accordance with the above agreement. The payment time is 7.5 million on September 29, 2018, and 7.5 million on November 28, 2018.

On November 20, 2018, in accordance with the application for withdrawal of the arbitration request submitted by the applicant, the Commission made (2018) J.Z.C.Z.No. 0787 ``Decision on Canceling (2018) J.Z.A.Z.No. 1421 Dispute Arbitration'', and decided revoke the case. On the same day, the applicant filed an application for arbitration in this case to the Commission.

It was also found that when the "Loan Contract" was signed, Respondent 3 held 95% of Respondent 2's equity. Respondent 1 recognized that Respondent 3 was still the actual controller of Respondent 1 in the trial.

The applicant signed the "Entrusted Agency Contract" with Beijing Zhong Yin Law Firm due to the dispute of the "Loan Contract", and agreed that the lawyer fee was 10,000 yuan

(II) About the validity of the contract in this case

Whether the "Loan Contract" signed by the applicant and the respondent 1 represents the true meaning of the respondent 1 is the main focus of dispute in this case. Respondent 1 believes that

10

the loan amount agreed in the Loan Contract has no upper limit. In the case that the Loan Contract has not been resolved by the authority of Respondent 1's company, the applicant still put the loan into a third-party company, Jiepei Industrial, which is not associated with the respondent 1, stating that the applicant was not a bona fide borrower in the process of borrowing. According to Article 50 of the contract law, the act of the legal representative acting beyond his authority shall not bind the company, so the loan contract cannot represent the true intention of the respondent 1.

The arbitration tribunal believes that the official seal of both parties and the signature of the legal representative are on the Loan Contract, the official seal and the signature of the legal representative can represent the company's intentions, and the respondent 1 did not raise any objection to the authenticity of its official seal and signature, nor did it submit any contrary evidence to refute it. Evidence 1 "Articles of Association of Shanghai Fukong Interactive Entertainment Co., Ltd." and evidence 2 "Stock Listing Rules of Shanghai Stock Exchange" submitted by respondent 1 are documents that are binding on respondent 1 itself, and they have not submitted evidence to prove that the applicant should accept the two documents, It also fails to cite the basis that laws and regulations have special provisions for the legal representative to sign the loan contract on behalf of the company. Therefore, the evidence submitted by respondent 1 can not effectively prove that the legal representative of respondent 1 signed the loan contract beyond his authority, let alone that the applicant knew or should have known about it. In the legal relationship of borrowing money, it is common phenomenon to agree on the upper or lower limit of the loan amount, to determine the loan amount based on the actual transfer in performance, and to agree that the third party will collect the money on its behalf, Respondent 1 claimed that the amount of the loan stipulated in the Loan Contract had no upper limit, and that the loan entered into a third-party company, Jiepei Industrial, which is not related to Respondent 1, and claimed that the applicant was not a bona fide counterpart, and the arbitration tribunal rejected it.

11



Respondent 2, Respondent 3 and Respondent 4 issued to the applicant the two "Guarantee Letters", with the official seals or signatures of the parties, Respondent 2, Respondent 3 and Respondent 4 had no objection to the authenticity of the "Letter of Guarantee".

Therefore, based on the existing evidence, the arbitration tribunal believes that the contract in this case is the true expression of the will of the parties, and the content does not violate the mandatory provisions of laws and administrative regulations, so it should be legal and effective.

(III) Objection to the jurisdiction of respondent 1

Respondent 1 filed a jurisdictional objection to the Commission, believing that as a listed company, it has strict restrictions on the management of public accounts. After internal review, no records about the use of the "Loan Contract" were found, and it could not be confirmed that the "Loan Contract" was the authenticity of the applicant's 1 official seal, therefore, under the circumstance that the authenticity of the official seal in the "Loan Contract" cannot be confirmed, the Commission has no jurisdiction over this case. The applicant thinks that the "Loan Contract" is stamped with the official seals of both parties, which represents the true intentions of both parties, and the arbitration clauses therein are clearly agreed, so this Commission has jurisdiction over this case. The other respondent did not comment on the jurisdiction.

In response, the arbitral tribunal noted that although the respondent 1 raised a challenge to its official seal in the Loan Contract, it did not submit a written application for the official seal to the arbitration tribunal, it also failed to submit to the arbitration tribunal that the official seal of the Loan Contract may be forged or there are other evidences sufficient to make the arbitral tribunal doubt whether the Loan Contract is its true meaning, and in the trial of this case, Respondent 1 also recognized the authenticity of the Loan Contract.



At the same time, the official seal management procedures mentioned by the respondent 1 are its internal management systems. In the case where Respondent 1 did not provide evidence to prove its existence because the system may affect its true intention or the validity of the Loan Contract and its arbitration clause, the arbitration tribunal rejected Respondent 1's reply, therefore, in the case where Respondent 1 did not provide evidence to prove that the arbitration agreement stipulated in the Arbitration Law is invalid or other circumstances sufficient to affect the jurisdiction of this Commission over this case, the arbitration tribunal rejected the jurisdictional objection raised by respondent 1, and this Commission has jurisdiction over this case.

（IV） On the applicant's claim for arbitration

1. Arbitration claim for repayment of loan principal by respondent 1

The applicant asked respondent 1 to repay the loan principal of 15 million yuan. Respondent 1 thought that he was not the real borrower and did not agree to bear the responsibility of repayment.

The arbitral tribunal held that the Loan Contract clearly stipulates that Respondent 1 shall appoint a collection account to the applicant through the Entrusted Collection Letter, and the applicant shall be deemed to have fulfilled the obligation of loan when the loan is paid to the account designated by respondent 1. The evidence submitted by the applicant in this case shows that it has transferred a loan of 30 million yuan to the Jiepei Industrial account designated by the Respondent 1 in the "Entrusted Collection Letter", so it can be determined that the applicant has fulfilled the loan obligation in accordance with the "loan contract", and should have the creditor's right to the respondent 1 in accordance with the law. In the case that Respondent 1 did not submit valid evidence to overturn the authenticity and legal validity of the Loan Contract, its claim that it is not a real borrower cannot be established, nor can it effectively counter the applicant's creditor's rights under the "Loan Contract". The loan period stipulated in the



13

"Loan Contract" has expired, and Respondent 1 as the borrower shall bear the responsibility for repayment. In this case, the applicant admitted that he had recovered the loan principal of 15 million yuan through the transfer of creditor's rights and asked respondent 1 to repay the remaining principal of 15 million yuan. The applicant's admission did not increase the repayment responsibility of respondent 1. The arbitration tribunal has no objection to this, and supports this arbitration request of the applicant.

2. Arbitration request regarding the payment of loan interest by respondent 1

The arbitration tribunal held that, as mentioned above, respondent 1 should be liable to the applicant for repayment, including the principal and interest of the loan. In the trial, respondent 1 claimed that the applicant had the act of "beheading interest", but the content of evidence 8 and 9 submitted by the respondent for this purpose could not show the relevance with the case, so the applicant refused to accept it, and respondent 1 did not submit other evidence to support it, so the arbitration tribunal rejected it. The "Loan Contract" stipulates that the interest rate standard during the loan period is 20% per annum, and it is agreed that overdue repayments shall be paid at the standard of 1‰ per day for liquidated damages. The applicant claimed in this case that the interest rate standard for the loan period and after the overdue period is 20%, which is not higher than the contract, and the arbitration tribunal supports it. Because the applicant admitted in the court hearing that the principal of the 15 million yuan loan under the contract of the case was recovered through the transfer of creditor's rights, namely the 7.5 million yuan was recovered on September 29, 2018, and the 7.5 million yuan was recovered on November 28, 2018. Therefore, the interest to be repaid by the respondent 1 should be calculated in sections. Although the applicant claimed that the second payment was due on November 28, 2018, he claimed that the interest should be calculated according to the principal of RMB 15 million from November 21, 2018, and the claim



14

did not increase the repayment liability of the respondent 1, which was recognized by the arbitration tribunal. Therefore, as of November 20, 2018, the interest payable by the respondent 1 is 5.3458 million yuan, and the specific calculation method is as follows:

| Interest-bearing principal | Value date | Stop date | Days | Interest Rate | Interest |
|---|---|---|---|---|---|
| 30 million yuan | 2017/12/22 | 2018/9/28 | 281 | 20% | 4.6833 million yuan |
| 22.5 million yuan | 2018/9/29 | 2018/11/20 | 53 | 20% | 0.6625 million yuan |
| Total | | | | | 5.3458 million yuan |

Since the applicant only claimed RMB 5.3167 million yuan (4.6667 + 0.65 million yuan), which did not exceed the aforementioned amount, the arbitration tribunal recognized it. At the same time, respondent 1 shall also repay to the applicant the loan interest calculated at the annual interest rate of 20% based on RMB 15 million yuan from November 21, 2018 to the date of actual repayment.

3. Arbitration claim regarding the payment of attorney fees by respondent 1

The applicant submitted to the arbitration tribunal the "Entrusted Agency Contract" and attorney fee invoices to prove that he was the lawyer entrusted in the case, and the attorney fee was 10,000 yuan. The arbitration tribunal held that, considering the specific circumstances of the case, the attorney's fee should be borne by the respondent 1. According to Article 51(4) of the Arbitration Rules, the arbitration tribunal supports this arbitration request

4. On the assumption of arbitration fees in this case

In light of the specific circumstances of this case, and in accordance with Article 51 of the arbitration rules of the Commission, the arbitration tribunal believes that the arbitration fee in this case should be fully borne by the respondent 1.

5.The arbitration request concerning the joint liability of the respondent 2, the respondent 3, and the respondent 4

15

The arbitration tribunal held that the two "Letters of Guarantee" issued by Respondent 2, Respondent 3 and Respondent 4 to the applicant clearly stipulated that: Respondent 2, Respondent 3 and Respondent 4 shall act as guarantors, provide the applicant with a joint liability guarantee for the Respondent 1's repayment obligations under the "Loan Contract". According to Article 18 of the "Guarantee Law of the People's Republic of China", "If the parties agree in the guarantee contract that the guarantor and the debtor shall bear joint liability for the debt, it is a joint liability guarantee. If the debtor under the joint liability guarantee fails to perform the debt at the expiration of the debt performance period stipulated in the main contract, the creditor may require the debtor to perform the debt, or the guarantor may be required to assume the guarantee responsibility within the scope of its guarantee." In this case, Respondent 1 failed to repay the applicant as agreed upon the expiration of the loan period stipulated in the "Loan Contract", and the applicant requested the respondent 2, the respondent 3, and the respondent 4 to bear the guarantee responsibility that did not exceed the guarantee scope stipulated in the "Letter of Guarantee", so the arbitration tribunal supported it.

## III. Award

The arbitration tribunal based on the facts ascertained, as well as the contractual agreement of this case and relevant laws and regulations, after collegial discussion, the award is made as follows:

(I Respondent 1 repays the principal of the loan of RMB 15 million yuan to the applicant;

(II) Respondent 1 pays the applicant the loan interest of RMB 5.3167 million yuan as of November 20, 2018.



(III) Respondent 1 shall pay the applicant a loan interest calculated at an annual interest rate of 20% based on RMB 15 million yuan from November 21, 2018 to the date of actual repayment;

(IV) Respondent 1 shall pay to the applicant 10,000 yuan of attorney fees paid for the case;

(V) The arbitration fee in this case is 149183.50 yuan (which has been paid in advance by the applicant), all of which is borne by the respondent 1, and the respondent 1 directly pays the applicant 149183.50 yuan of the arbitration fee advanced by the applicant on its behalf.

(VI) Respondent 2, Respondent 3, and Respondent 4 shall be jointly and severally liable for the settlement of the arbitration claims in items (1) to (5) above.

For the amounts that the respondent should pay to the applicant for each of the above-mentioned decisions, the respondent shall complete the payment within ten days from the date of service of this award. If the payment is overdue, the interest on the debt during the delayed performance period shall be doubled in accordance with the provisions of Article 253 of the Civil Procedure Law of the People's Republic of China,.

(There is no text below this page, continue on the next page)



This award is final and shall come into force from the date it is made.

Sealed by Beijing Arbitration Commission

Presiding arbitrator (Signature): Cheng Huiping

Arbitrator (Signature): Ding Ding

Arbitrator (Signature): Zhu Weiyi

Beijing, March 24, 2020



18

**BAC QR Code**



# NOTARIAL CERTIFICATE

(Translation)

（2021） J.F.Y.W.J.Z.Zi, No.01021

Applicant: China Railway Dacheng (Zhuhai) Investment Management Co., Ltd., Address: (Centralized Office Area) Room 105-27185 No. 6 Baohua Road, Hengqin New Area, Zhuhai.

Legal Representative: Cen Jing, female, born on Jun. 5, 1982, I.D. Card No. 110101198206053524.

Attorney: Ju Haibo, male, born on Oct. 10, 1988, I.D. Card No. 140427198810102412.

Item of Notarization: Conformity of Photocopy and Original

This is to certify that the photocopy attached hereto is in conformity with the original of Arbitral Award that Ju Haibo, attorney of applicant China Railway Dacheng (Zhuhai) Investment Management Co., Ltd. showed to me.

Notary: Wang Liya

Beijing Fangyuan Notary Public Office

The People's Republic of China

March 11, 2021

L 1 05007370

# 公 证 书

（2021）京方圆外经证字第 01022 号

申请人：中铁大成（珠海）投资管理有限公司，住所珠海市横琴新区宝华路 6 号 105 室–27185（集中办公区）。

法定代表人：岑菁，女，1982 年 6 月 5 日出生，公民身份号码 110101198206053524。

委托代理人：琚海波，男，1988 年 10 月 10 日出生，公民身份号码 140427198810102412。

公证事项：译本与原本相符

兹证明前面的英文译本与（2021）京方圆外经证字第 01021 号公证书中文原本内容相符。

中华人民共和国北京市方圆公证处

公证员　



LI 05007373

二〇二一年十二月十一日

## NOTARIAL CERTIFICATE

(Translation)

(2021) J.F.Y.W.J.Z.Zi, No. 01022

Applicant: China Railway Dacheng (Zhuhai) Investment Management Co., Ltd., Address: (Centralized Office Area) Room 105-27185 No. 6 Baohua Road, Hengqin New Area, Zhuhai.

Legal Representative: Cen Jing, female, born on Jun. 5, 1982, I.D. Card No. 110101198206053524.

Attorney: Ju Haibo, male, born on Oct. 10, 1988, I.D. Card No. 140427198810102412.

Item of Notarization: Conformity of Translation and Original

This is to certify that the English translation enclosed is identical with the Chinese original of the Notarial Certificate (2021) J.F.Y.W.J.Z.Zi, No. 01021.

Notary: Wang Liya

Beijing Fangyuan Notary Public Office

The People's Republic of China

March 11, 2021

L I 05007372

# EXHIBIT D

# 2017 China Law LEXIS 1299

**Reporter**
2017 China Law LEXIS 1299 *

**Title:** Arbitration Law of the People's Republic of China (Revised in 2017)

**Document Number:** 3195217

**Article Number:** Order of the President of the People's Republic of China No.76

**Topic:** Civil Procedure Law

**Effective:** Effective

**Promulgator:** Standing Committee of the National People's Congress

**Promulgation Date:** 09-01-2017

**Effective Date:** 01-01-2018

**Effect Area:** [*1] NATIONAL

**Source:** China Online

**Update:** replacement

Arbitration Law of the People's Republic of China (Revised in 2017)

Order of the President of the People's Republic of China No.76

September 1, 2017

(Adopted at the 9th Session of the Standing Committee of the 8th National People's Congress on August 31, 1994; amended for the first time in accordance with the Decision of the Standing Committee of the National People's Congress on Amending Certain Laws at the Tenth Session of the Standing Committee of the 11th National People's Congress on August 27, 2009; and amended for the second time in accordance with the Decision of the Standing Committee of the National People's Congress on Amending Eight Laws Including the Judges Law of the People's Republic of China at the 29th Session of the Standing Committee of the 12th National People's Congress on September 1, 2017)

Contents

2017 China Law LEXIS 1299, *1

Chapter I General Provisions

Chapter II Arbitration Commission and Arbitration Association

Chapter III Arbitration Agreement

Chapter IV Arbitration Procedure
Section 1 Application and Acceptance
Section 2 Composition of the Arbitral Tribunal
Section 3 Hearing and Arbitral Awards

Chapter V Application for Cancellation [*2]  of an Award
Chapter VI Enforcement

Chapter VII Special Provisions on Foreign-Related Arbitration
Chapter VIII Supplementary Provisions

Chapter I General Provisions

Article 1 This Law is formulated in order to ensure fair and timely arbitration of economic disputes, protect the legitimate rights and interests of the relevant parties and guarantee the sound development of the socialist market economy.

Article 2 Contractual disputes and other disputes arising from property rights and interests between citizens, legal persons and other organizations of equal status in law may be submitted for arbitration.

Article 3 The following disputes shall not be submitted for arbitration:
1. disputes over marriage, adoption, guardianship, child maintenance and inheritance; and

2. administrative disputes falling within the jurisdiction of the relevant administrative organs according to law.

Article 4 The parties settling disputes by means of arbitration shall reach an arbitration agreement on a mutually voluntary basis. An arbitration commission shall not accept an application for arbitration submitted by one of the parties in the absence of an arbitration agreement.

Article [*3]  5 A people's court shall not accept an action initiated by one of the parties if the parties have concluded an arbitration agreement, unless the arbitration agreement is invalid.

Article 6 An arbitration commission shall be selected by the parties by agreement.

The level jurisdiction system and the territorial jurisdiction system shall not apply to arbitration.

Article 7 Disputes shall be fairly and reasonably settled by arbitration on the basis of facts and in accordance with the relevant provisions of law.

Article 8 Arbitration shall be conducted in accordance with the law, independent of any intervention by administrative organs, social organizations or individuals.

2017 China Law LEXIS 1299, *3

Article 9 The system of final and binding arbitral award shall apply to arbitration. After an arbitral award is rendered, where the parties apply for arbitration or initiate an action to the people's court in respect of the same dispute, an arbitration commission or a people's court accept the action.

If the arbitration award is canceled or is not enforced as rendered by a people's court in accordance with the law, the parties may, in accordance with a new arbitration agreement between them in respect [*4] of the dispute, apply for arbitration or initiate legal proceedings with the people's court.


Chapter II Arbitration Commission and Arbitration Association


Article 10 Arbitration commissions may be established in municipalities directly under the Central Government, and cities where the people's governments of provinces and autonomous regions are located or in other cities divided into districts according to needs. Arbitration commissions shall not be established at each level of the administrative divisions.

The people's governments of the municipalities and cities specified in the above paragraph shall organize the relevant departments and the Chamber of Commerce for the formation of an arbitration commission.

The establishment of an arbitration commission shall be registered with the judicial administrative department of the relevant provinces, autonomous regions or municipalities directly under the Central Government.


Article 11 An arbitration commission shall meet the following requirements:
1. it shall have its own name, domicile and Articles of association;
2. it shall possess the necessary property;
3. it shall have its own members; and

4. it shall have appointed [*5]  arbitrators.

The Articles of association of an arbitration commission shall be formulated in accordance with this Law.


Article 12 An arbitration commission shall comprise a chairman, two to four vice-chairmen and seven to eleven members.

The chairman, vice-chairmen and members of an arbitration commission must be persons specialized in law, economic and trade and persons who have practical work experience. The number of specialists in law, economic and trade shall not be less than two-thirds of the members of an arbitration commission.


Article 13 An arbitration commission shall appoint fair and honest person as its arbitrators.
Arbitrators shall meet one of the following requirements:

1. they have passed the national unified legal professional qualification exam and obtained the legal professional qualification, and have engaged in arbitration work for eight years;
2. they have worked as a lawyer for eight full years;
3. they have worked as judges for eight years;
4. they are engaged in legal research or legal teaching with a senior academic title; or

5. they have legal knowledge and are engaged in professional work relating to economics and trade with a senior academic [*6]  title or at the equivalent professional level.

The arbitration commission shall prepare a register of arbitrators according to different specialties.

2017 China Law LEXIS 1299, *6

 Article 14 Arbitration commissions shall be independent of administrative organs and there are no subordinate relations with any administrative organs. There should not be any relations between different arbitration commissions.


 Article 15 The China Arbitration Association is a social organization with the status of a legal person. Arbitration commissions are members of the China Arbitration Association. The Articles of association of the China Arbitration Association shall be formulated by the national general meeting of the members.

 The China Arbitration Association is an organization in charge of self-regulation of arbitration commissions. It shall conduct supervision over the breach of discipline of the arbitration commissions and their members and arbitrators in accordance with its Articles of association.

 The China Arbitration Association shall formulate Arbitration Rules in accordance with this Law and the Civil Procedure Law.


 Chapter III Arbitration Agreement


 Article 16 An arbitration agreement shall include the [*7] arbitration clauses stipulated in a contract and any other written agreement for arbitration concluded before or after a dispute occurs.

 The following contents shall be included in an arbitration agreement:

 1. the expression of the parties' wish to submit for arbitration;
 2. the matters to be arbitrated; and

 3. the Arbitration Commission selected by the parties.


 Article 17 An arbitration agreement shall be invalid under any of the following circumstances:

 1. matters agreed upon for arbitration are beyond the scope of arbitration prescribed by law;

 2. an arbitration agreement concluded by persons without or with limited capacity for civil acts; and

 3. one party forces the other party to sign an arbitration agreement by means of duress.


 Article 18 If the arbitration matters or the arbitration commission are not agreed upon by the parties in the arbitration agreement, or if the relevant provisions are not clear, the parties may supplement the agreement. If the parties fail to agree upon the supplementary agreement, the arbitration agreement shall be invalid.


 Article 19 An arbitration agreement shall exist independently. Any changes to, rescission, termination or invalidity [*8] of the contract shall not affect the validity of the arbitration agreement.
 An arbitral tribunal has the right to rule on the validity of a contract.


 Article 20 If the parties object to the validity of the arbitration agreement, they may apply to the arbitration commission for a decision or to a people's court for a ruling. If one of the parties requests for a decision from the arbitration commission, but the other party applies to a people's court for a ruling, the people's court shall give the ruling.

 If the parties object to the validity of the arbitration agreement, the objection shall be made before the start of the first hearing of the arbitration tribunal.

Chapter IV Arbitration Procedure

Section 1 Application and Acceptance

Article 21 Parties applying for arbitration shall meet the following conditions:

1. There is an arbitration agreement;

2. There is a specific arbitration request and facts and grounds; and

3. The claim is under the jurisdiction of the arbitration commission.

Article 22 A party applying for arbitration shall submit to an arbitration commission the arbitration agreement, an application for arbitration and copies thereof.

Article 23  [*9]  The following particulars shall be specified in an application for arbitration:
1. the name, sex, age, occupation, work unit and address of the party, the name, domicile and legal representative of the legal person or other organization and the name and position of its person-in-charge;

2. the arbitration request and facts and grounds on which the claim is based; and
3. evidence and the source thereof, the name and address of the witness(es).

Article 24 The arbitration commission shall, within 5 days from the date of the receipt of an application for arbitration, notify the parties that it considers the conditions for acceptance have been fulfilled, and that the application is accepted by it. If the arbitration commission considers that the conditions have not been fulfilled, it shall notify the parties of acceptance in writing and state its reasons.

Article 25 Upon acceptance of an application for arbitration, the arbitration commission shall, within the time limit specified by the Arbitration Rules, serve a copy of the Arbitration Rules and the list of arbitrators on the claimant, and serve a copy of the arbitration application, the Arbitration Rules and the list of arbitrators [*10]  on the respondent.

Upon receipt of a copy of the arbitration application, the respondent shall, within the time limit prescribed by the Arbitration Rules, submit its defense to the arbitration commission. Upon receipt of the defense, the arbitration commission shall, within the time limit prescribed by the Arbitration Rules, serve a copy of the reply on the claimant. The failure of the respondent to submit a defense shall not affect the proceeding of the arbitration procedures.

Article 26 Where the parties have reached an arbitration agreement, but one of the parties initiates an action in a people's court without stating the existence of the arbitration agreement, the people's court shall reject the action if the other party submits to the court the arbitration agreement before the first hearing of the case unless the arbitration agreement is invalid., If the other party fails to object to the hearing by the people's court before the first hearing, the arbitration agreement shall be considered to have been waived by the party and the people's court shall proceed with the hearing.

Article 27 A claimant may abandon or alter his arbitration claim. The respondent may accept the [*11]  arbitration claim or object to it and has the right to lodge a counterclaim.

Article 28 A party may apply for property preservation if, as the result of an act of the other party or for some other reasons, it appears that an award may be impossible or difficult to enforce.

If one of the parties applies for property preservation, the arbitration commission shall submit to a people's court the application of the party in accordance with the relevant provisions of the Civil Procedure Law.

If a property preservation order is unfounded, the applicant shall compensate the party against whom the order was made for any losses sustained as a result of the implementation of the property preservation order.

Article 29 The parties and their legal representatives may appoint lawyers or engage agents to handle matters relating to the arbitration. In the event that a lawyer or an agent is appointed to handle the arbitration matters, a letter of authorization shall be submitted to the arbitration commission.

Section 2 Composition of the Arbitral Tribunal

Article 30 An arbitral tribunal may comprise three arbitrators or one arbitrator. If an arbitration tribunal comprises three arbitrators, [*12] a presiding arbitrator shall be appointed.

Article 31 If the parties agree to form an arbitral tribunal comprising three arbitrators, each party shall select or authorize the chairman of the arbitration commission to appoint one arbitrator. The third arbitrator shall be selected jointly by the parties or be nominated by the chairman of the arbitration commission in accordance with a joint mandate given by the parties. The third arbitrator shall be the presiding arbitrator.

If the parties agree to have one arbitrator to form an arbitration tribunal, the arbitrator shall be selected jointly by the parties or be nominated by the chairman of the arbitration commission in accordance with a joint mandate given by the parties.

Article 32 If the parties fail, within the time limit prescribed by the Arbitration Rules, to select the form of the arbitration tribunal or fail to select arbitrators, the arbitrators shall be appointed by the chairman of the arbitration commission.

Article 33 After the arbitral tribunal is constituted, the arbitration commission shall notify the parties in writing of the composition of the arbitral tribunal.

Article 34 In any of the following circumstances, [*13] an arbitrator must withdraw from the arbitration, and the parties shall have the right to apply for his withdrawal if he:

1. is a party or a close relative of a party or of a party's representative;

2. is related in the case;

3. has some other relationship with a party to the case or with a party's agent which might affect the impartiality of the arbitration;

4. meets a party or his agent in private, accepts an invitation for dinner by a party or his representative or accepts gifts presented by any of them.

Article 35 A party applying for the withdrawal of an arbitrator shall state his reasons and submit the application prior to the first hearing. An application for withdrawal may also be submitted before the conclusion of the last hearing if reasons for the withdrawal only became known after the commencement of the first hearing.

Article 36 Whether an arbitrator is to be withdrawn or not shall be determined by the chairman of the arbitration commission. If the chairman is serving as an arbitrator, the withdrawal shall be determined collectively by the arbitration commission.

Article 37 If an arbitrator is unable to perform his duties due to withdrawal or any other reason, [*14] another arbitrator shall be selected or appointed in accordance with the provisions of this Law.

2017 China Law LEXIS 1299, *14

After the selection or appointment of a new arbitrator due to the withdrawal of an arbitrator, the parties may apply for the resumption of the arbitration procedure. The arbitral tribunal shall determine whether the resumption of the procedure may be allowed. The arbitral tribunal may determine on its own whether the arbitration procedure shall be resumed.

Article 38 An arbitrator who is involved in one of the circumstances prescribed in Item 4, Article 34 and whose violations are serious, or an arbitrator who is involved in those prescribed in Item 6, Article 58 shall bear legal liabilities in accordance with the law and the arbitration commission shall remove his name from the list of arbitrators.

Section 3 Hearing and Arbitral Awards

Article 39 An arbitral tribunal shall hold a tribunal session to hear an arbitration case. If the parties agree not to hold a hearing, the arbitration tribunal may render an award in accordance with the arbitration application, the defense statement and other documents.

Article 40 An arbitration shall not be conducted in public. If the parties [*15] agree to a public hearing, the arbitration may proceed in public, except those concerning state secrets.

Article 41 The arbitration commission shall notify the two parties within the time limit provided by the Arbitration Rules of the date of the hearing. Either party may request to postpone the hearing within the time limit provided by the Arbitration Rules if there is a genuine reason. The arbitral tribunal shall decide whether to postpone the hearing.

Article 42 If an applicant for arbitration who has been given a notice in
writing fails to appear before the tribunal without good reasons, or leaves the tribunal room during a hearing without the permission of the arbitral tribunal, the applicant shall be deemed as having withdrawn his application.
If the respondent was served with a notice in writing but does not appear before the tribunal without due reasons or leaves the tribunal room during a hearing without the permission of the arbitral tribunal, an award by default may be given.

Article 43 The parties shall produce evidence in support of their claims.

An arbitration tribunal may collect on its own evidence it considers necessary.

Article 44 For specialized matters, [*16] an arbitral tribunal may submit them to an appraisal organ agreed upon by the parties or to the appraisal organ appointed by the arbitration tribunal if it deems such appraisal to be necessary.
According to the claim of the parties or the request of the arbitral tribunal, the appraisal organ shall appoint an appraiser to participate in the hearing. Upon the permission of the arbitral tribunal, the parties may question the appraiser.

Article 45 Any evidence shall be produced at the start of the hearing. The parties may challenge the validity of such evidence.

Article 46 In the event that the evidence might be destroyed or that it would be difficult to obtain the evidence later on, the parties may apply for the evidence to be preserved. If the parties apply for such preservation, the arbitration commission shall submit the application to the basic people's court in the place where the evidence is located.

Article 47 The parties have the right to argue during arbitration procedures. At the end of the debate, the presiding arbitrator or the sole arbitrator shall ask for the final opinion of the parties.

2017 China Law LEXIS 1299, *16

Article 48 An arbitration tribunal shall make a written record of the [*17] hearing. If the parties or other participants to the arbitration consider that the record has omitted a part of their statement or is incorrect in some other respect, they shall have the right to request correction thereof. If no correction is made, the request for correction shall be noted in the written record.

The arbitrators, recorder, parties and other participants to an arbitration shall sign or affix their seals to the record.

Article 49 After the submission of an application for arbitration, the parties may settle the dispute among themselves through conciliation. If a conciliation agreement has been reached, the parties may apply to the arbitration tribunal for an award based on the conciliation agreement. They may also withdraw the application for arbitration.

Article 50 If the parties fall back on their words after the conclusion of a conciliation agreement and the withdrawal of the arbitration application, application may be made for arbitration in accordance with the arbitration agreement.

Article 51 Before giving an award, an arbitral tribunal may first attempt to conciliate. If the parties apply for conciliation voluntarily, the arbitral tribunal shall conciliate. [*18] If conciliation is unsuccessful, an award shall be made promptly.
When a settlement agreement is reached by conciliation, the arbitral tribunal shall prepare the conciliation statement or the award on the basis of the results of the settlement agreement. A conciliation statement shall have the same legal force as that of an award.

Article 52 A conciliation statement shall set forth the arbitration claims and the results of the agreement between the parties. The conciliation statement shall be signed by the arbitrators, sealed by the arbitration commission, and served on both parties.
A conciliation statement shall have legal effect once signed and accepted by the parties.
If the parties fall back on their words before the conciliation statement is singed and accepted by them, an award shall be made by the arbitral tribunal promptly.

Article 53 An award shall be based on the opinion of the majority of arbitrators. The opinion of the minority arbitrators shall be recorded in writing. If an opinion of the minority arbitrators shall be recorded in writing. If the tribunal fails to form a majority opinion, the award shall be given in accordance with the opinion of the presiding [*19] arbitrator.

Article 54 The arbitration claims, the matters in dispute, the grounds upon which an award is given, the results of the judgment, the responsibility for the arbitration fees and the date of the award shall be set forth in the award. If the parties agree not to include in the award the matters in dispute and the grounds on which the award is based, such matters may not be stated in the award. The award shall be signed by the arbitrators and sealed by the arbitration commission. The arbitrator who disagrees with the award may select to sign or not to sign it.

Article 55 During the course of arbitration by an arbitration tribunal, where a part of facts has been made clear, a partial award may first be given in relation to that part.

Article 56 The parties may, within 30 days of the receipt of the award, request the arbitration tribunal to correct any typographical errors, calculation errors or matters which had been awarded but omitted in the award.

Article 57 An award shall be legally effective on the date it is given.

Chapter V Application for Cancellation of an Award

2017 China Law LEXIS 1299, *19

Article 58 The parties may apply to the intermediate people's court at the place where [*20] the arbitration commission is located for cancellation of an award if they provide evidence proving that the award involves one of the following circumstances:

1. there is no arbitration agreement between the parties;

2. the matters of the award are beyond the extent of the arbitration agreement or not under the jurisdiction of the arbitration commission;

3. the composition of the arbitral tribunal or the arbitration procedure is in contrary to the legal procedure;
4. the evidence on which the award is based is falsified;
5. the other party has concealed evidence which is sufficient to affect the impartiality of the award; or

6. the arbitrator(s) has (have) demanded or accepted bribes, committed graft or perverted the law in making the arbitral award.
The peoples' court shall rule to cancel the award if the existence of one of the circumstances prescribed in the preceding clause is confirmed by its collegiate bench.
The people's court shall rule to cancel the award if it holds that the award is contrary to the social and public interests.
(Relevant articles: Legislation 1)

Article 59 If a party applies for cancellation of an award, an application shall be submitted within [*21] 6 months after receipt of the award.

Article 60 The people's court shall, within 2 months after the receipt of the application for cancellation of an award, render its decision for cancellation of the award or for rejection of the application.

Article 61 If the people's court holds that the case may be re-arbitrated by the arbitral tribunal after the receipt of the application for cancellation of an award, the court shall inform the arbitral tribunal of re-arbitrating the case within a certain period of time and rule to suspend the cancellation procedure. If the arbitration tribunal refuses to re-arbitrate, the people's court shall rule to resume the cancellation procedure.

Chapter VI Enforcement

Article 62 The parties shall execute an arbitration award. If one party fails to execute the award, the other party may apply to a people's court for enforcement in accordance with the relevant provisions of the Civil Procedure Law, and the court shall enforce the award.
(Relevant articles: Articles 1)

Article 63 A people's court shall, after examination and verification by its collegiate bench, rule not to enforce an award if the respondent in enforcement procedure provides [*22] evidence proving that the award involves one of the circumstances prescribed in Paragraph 2, Article 217 of the Civil Procedure Law.

Article 64 If one party applies for enforcement of an award while the other party applies for cancellation of the award, the people's court receiving such application shall rule to suspend enforcement of the award.
If a people's court rules to cancel an award, it shall rule to terminate enforcement. If the people's court overrules the application for cancellation of an award, it shall rule to resume enforcement.

Chapter VII Special Provisions on Foreign-Related Arbitration

2017 China Law LEXIS 1299, *22

Article 65 The provisions of this Chapter shall apply to all arbitration of disputes arising from foreign economic, trade, transportation or maritime matters. In the absence of provisions in this Chapter, other relevant provisions of this Law shall apply.

Article 66 A foreign-related arbitration commission may be organized and established by the China International Chamber of Commerce.

A foreign arbitration commission shall comprise one chairman, several vice-chairmen and several committee members.

The chairman, vice-chairmen and committee members may be appointed by [*23] the China International Chamber of Commerce.

Article 67 A foreign arbitration commission may appoint foreigners with professional knowledge in law, economy and trade, science and technology and other fields as arbitrators.

Article 68 In the event that the parties to a foreign-related arbitration apply for evidence preservation, the foreign arbitration commission shall submit their applications to the intermediate people's court in the place where the evidence is located.

Article 69 The arbitration tribunal of a foreign arbitration commission may record the details of the hearing in writing or record the essentials of the hearing in writing. The written record of the essentials shall be signed or sealed by the parties and other participants in the arbitration.

Article 70 A people's court shall, after examination and verification by its collegiate bench, rule to cancel an award if a party to the case provides evidence proving that the arbitration award involves one of the circumstances prescribed in Paragraph 1, Article 260 of the Civil Procedure Law.

Article 71 A people's court shall, after examination and verification by its collegiate bench, rule not to enforce an [*24] award-if the respondent provides evidence proving that the arbitral award involves one of the circumstances prescribed in Paragraph 1, Article 260 of the Civil Procedure Law.
(Relevant articles: Articles 1)

Article 72 Where the party subject to enforcement or its property is not within the territory of the People's Republic of China, a party applying for the enforcement of a legally effective arbitration award shall apply directly to the foreign court having jurisdiction for recognition and enforcement of the award.

Article 73 Foreign-related arbitration rules may be formulated by the China International Chamber of Commerce in accordance with this Law and the relevant provisions of the Civil Procedure Law.

Chapter VIII Supplementary Provisions

Article 74 If the law has stipulated a time limit for arbitration, such provisions of the law shall apply. If the law has not stipulated a time limit for arbitration, the provisions on the limitation of actions shall apply.

2017 China Law LEXIS 1299, *24

 Article 75 The arbitration Commission may formulate provisional arbitration rules in accordance with this Law and the relevant provisions of the Civil Procedure Law before the formulation of the arbitration [*25] rules by the China Arbitration Association.


 Article 76 The parties shall pay arbitration fees in accordance with the relevant provisions.

 The methods for the collection of arbitration fees shall be submitted to the commodity prices administration for approval.


 Article 77 Arbitration of labor disputes and disputes over contracts for undertaking agricultural projects within agricultural collective economic organizations shall be separately stipulated.


 Article 78 In the event of conflict between the provisions on arbitration formulated before the coming into effect of this Law and the provisions of this Law, the provisions of this Law shall prevail.


 Article 79 Arbitration organs established before the coming into effect of this Law in the municipalities directly under the Central Government, in the municipalities where the people's governments of the provinces or autonomous regions and in other cities divided into districts must be re-organized in accordance with the relevant provisions of this Law. The arbitration organs which are not re-organized shall be terminated at the expiration of one year after the date of implementation of this Law.

 All other arbitration organs [*26] established before the implementation of this Law and not conforming to the provisions of this Law shall be terminated on the date of implementation of this Law.


 Article 80 This Law shall come into effect as of September 1, 1995.

**Load Date:** May 11, 2018

LexisNexis China Law Database
©2018 LexisNexis China, a division of Reed Elsevier Information Technology (Beijing) Co., Ltd. All Rights Reserved

---

**End of Document**